Judge Marshall
delivered the Opinion of the Court in this case —which having been heard before Judge Ewing took his seat, he took no part in the decision.
which Hunt, an indorsee, recovered judgment against Triplett, the drawer of the bill. This is an action of assumpsit on a bill of exchange, in
Motions were made by the defendant for instructions as in case of a non-suit, and afterwards for a new trial; both of which motions being overruled, and exceptions taken, he prosecutes a writ of error to reverse the judgment.
The only question presented for the consideration of this Court, relates to the point of due diligence in transmitting notice of protest and non-payment.
The bill was drawn by the defendant, John H. Triplett, upon Charles Triplett, for two thousand dollars, payable to Lawrence and George Triplett, at the office of the Bank of the United States at Richmond, Virginia; and being accepted by the drawee, was indorsed by Lawrence Triplett, George Triplett, John W. Hunt, Thomas W. Jones, M. Newkirk & Co. and J. Andrews, 1st ass’t Cash’r.
On Saturday, the 4th of May, 1833, which was the last day of grace, it was presented for payment at the request of J. Robertson, Cashier, the indorsee of Andrews; and payment being then refused, it was regularly protested.
On the 9th of May, M. Newkirk & Co. appear to have received notice at Philadelphia, and to have forwarded it to Hunt, who by letter from Lexington, dated on the 17th, transmitted notices to Flemingsburgh, where they arrived late in the evening of the 19th, and were delivered to the drawer and first endorsers, residing in the vicinity, on the morning of the 20th.
Each party to a bill, when notified of its being protested, is allowed until the next day, to trans mit notice to those parties to whom he may resort.
To charge the drawer of a bill or any indorser, there mustibe due; diligence used— not only by the plt’f, but by every party thro5 whom the notice is transmitted,— from the holder up to the party charged.
The place of residence of Andrews and Jones does not appear, nor is there any proof to authorize the.presumption that either of them was notified.
We have no doubt, that these facts, coupled with the proof as to the time within which the mail passed from Philadelphia to Lexington, and from Lexington to Flemingsburgh, are sufficient, without proof of the precise time when Hunt received notice, to authorize the presumption, that there was due diligence, both on his part and on that of Newkirk & Co. For admitting the latter to have received it on the 9th, it could not, if committed to the mail on the same day, have reached Hunt earlier than the 16th. If received on the 16th, he was allowed by the law merchant, until the next day, to transmit it to the previous parties. (Chittyon Bills, 315, 318.) And the mail of the 17th was in fact the earliest by which it could have reached them, if received on the 16th. If on the other hand, Hunt did not receive notice until the 17th, to be received at Lexington on that day, it must have been put in the mail which left Philadelphia on the 10th, and Newkirk & Co. receiving it on the 9th, had until the next day to forward it to Hunt.
But this is not sufficient to authorize the verdict against the defendant, unless it also appear that there was due diligence in notifying Newkirk & Co. Neither the drawer nor any indorser can be rendered liable, unless there be due diligence on the part of the holder, and of every party to the bill, through whom the notice is transmitted to him. And this diligence must appear on the trial, either by exact proof of the time when each party received and forwarded notice, or by proof of facts which authorize the presumption that it was forwarded by each party in due time. On this point, the proof' in the present case has failed. It does not appear when the notice of protest was put into the mail at Richmond, nor to whom the holder gave notice. But as the 5th of May was Sunday, he was not bound to give notice until the sixth. Chitty on Bills, 316 and 223, where reference is made to 3 Com. Rep. 489. If he had done so, it should, according to the evidence, have arrived at Philadelphia on the 8th. Newkirk & Co. however, did not receive *128 it. until the 9th; and then not from the holder, or his agent at Richmond, but from the Bank of the United States at Philadelphia. If that bank had been a party to the bill entitled to notice, and authorized to notify Newkirk & Co. as previous parties, and if it appeared, either that the notice to the bank, as a party, had been placed in the post office at Richmond on the 6th of May, or had been received at Philadelphia on the 8th, there might have been enough to sustain the presumption of due diligence in the parties previous to Newkirk & Co. It is possible that the bank was a party through J. Andrews, first assistant cashier, but there is no proof of that fact, nor of any other from which it can properly be inferred. And without proof of that and other facts just stated, there was no ground from which the jury were authorized to presume, that due diligence had been used by the holder.
to the drawer; route^may circuitous, and t^LÍransmhted, with due dilortTwilí biTsuff°bTtt0 th*3 draweí and all the indorsers to whom notice is sent. ,, Notice of the protest of a bill may be transmitted thro’ the several indorsers
It will be perceived, that we concede the propriety of giving notice by the circuitous mode which appears to have been adopted in this case, and which was objected to by the drawer of the bill. We have done so, because ^ *s authorized by the law merchant, as explained by Chitty on Bills, and as plainly understood by this Court, *n case of Hickman vs. Ryan, 5 Lit. Rep. 24 — F. & M. Bank vs. Turner 2 Litt. Rep. 19, and several other cases. And also? because it is manifest, that in many cases, w^-ere the kill passes through numerous hands by endorsement, the holder has no means of knowing the regjdence of any of the remote indorsers or of the drawer, __ . r , . , ... . . . He has therefore the right to notify any previous mdorser, and an indorser duly notified by any subsequent party who is liable on the bill, having the same right as to parties previous to himself; the notices may pass back to the drawer, through the same or any portion of the same circuit through which the bill itself has passed. But if in pursuing this mode of giving notice, any party who is liable fails to use due diligence in forwarding it, he by his laches makes the bill his own, and thereby discharges all preceding parties whose liability depends upon his forwarding notice in due time.
*129 Wherefore, as there was no sufficient evidence of due diligence'on the part of the holder of the’ bill jn'giving notice of its protest for non-payment, a new trial should have been granted. The judgment is therefore reversed, and the cause remanded that a new trial may be had, in ■conformity with this opinion.