## Smith *vs* Roach's Executor.

APPEAL FROM THE TODD CIRCUIT.

*Foreign exchange.   Bills of exchange.   Notice.   Evidence.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

This is an action on a bill of exchange, by petition under our statute, instituted by Roach, as Cashier of the Branch Bank of Tennessee, at Clarksville, and revived in the name of his executor against Smith as endorser. The bill is for $2,500, drawn by C. M. Barker & Co., on Messrs. Robert & Williams of New York, in favor of Wm. Harlan, payable four months after date, and endorsed by him to B. D. Smith, the appellee, and by Smith to Roach, the Cashier of the Bank aforesaid, by which the bill was purchased, and endorsed by Roach, Cashier, to the Cashier of the mother Bank, at Nashville, and was endorsed by him to O. J. Cummin, Esq., Cashier, New York, and transmitted to him for collection. The jury, under the instruction of the Court, found for the plaintiff, and Smith has appealed to this Court.

Three questions are raised which we will notice:

1st. That the evidence is not sufficient to prove Roach to be an executor. By the statute of 1812, (1 *Stat. Laws,* 674,) an authenticated copy of the certificate of probate is sufficient to prove that the plaintiff is a foreign executor. The fact that he has been appointed and qualified by the Court, is evidence that he was duly and *rightfully* appointed, and pre-supposes that all the previous requisites to a *rightful* appointment had been shown.

2d. It is objected that there is no sufficient proof of due notice having been given of the dishonor of the bill for non-payment. That the notice might have reached Smith, the endorser, perhaps a day sooner by a direct rout from New York to his residence. The general rule which has been sanctioned by this Court, is that where the bill has passed through several hands by endorsement, and is

dishonored, that each party has a day after he has received notice, to transmit notice to a preceding party, from whom he has received the bill, and especially if he resides in the same neighborhood or county where the other parties reside, and he the same time to his preceding party: *Smith's Mercantile Law,* 147, side page, 201;) *Rickford* vs *Ridge,* (2 *Camp.* 537;) *Darbyshire* vs *Parker,* (6 *East,* 3;) *Triplett* vs *Hunt,* (3 *Dana,* 126, and the authorities referred to.) And we believe it customary among bankers and merchants, where the bill is endorsed and sent abroad for collection, for the Bank, agent or holder, to send the notices of dishonor to the place and party from whom he received it, for distribution, and he to the next. This course has been pursued in this case, and allowing the time of one day to each, the notice to Smith was reasonable, being as speedy as the course of the mail by Nashville, where the notices were properly sent, would justify.

3d. It is objected that the bill was presented to the drawee for acceptance, and dishonored, and no notices given of the dishonor. And as proof of the fact the defendant relied on a memorandum or *noting* on the face of the bill, in the following abbreviated words: "Pro. n. a. April the 19th, 1842.     JOHN D. CAMPBELL,

"*Not. Pub. N. Y.*"

which he proved by the plaintiff's witness, the President of the Bank of Tennessee, to mean, usually, that the bill had been presented by the Notary Public to the drawee, and noted for protest for non-acceptance, and further, that John D. Campbell, whose name was to the protest for non-payment, dated the 17th June, 1843, when the bill fell due, was in the same hand write, and he believed to be the same signature with that signed under the abbreviated note aforesaid. This evidence was all excluded from the jury by the Court, and a verdict found for the plaintiff.

It is not indispensable that a bill of exchange drawn payable any number of days after date, should be presented for acceptance until due, but if presented and not accepted, notice thereof should be given in reasonable time to the drawer, &c.

The doctrine is well settled that a holder is not bound to present a bill to the drawee for acceptance, that is made payable a given number of days or months after *date,* until after it falls due, yet if he does present it for acceptance and the bill is dishonored, he is bound to give

—And if such a bill be presented and not accepted, though no protest be made or notice given,

due notice to those whom he intends to hold responsible for its contents: *Bank of Washington* vs *Triplett*, (1 *Peters*, 25;) *Townsley* vs *Simrall*, (2 *Peters*, 170.) The reason of the rule is, that the drawer, if he has funds in the hands of the drawee, may immediately withdraw them, and the endorsers may be apprised of the necessity of taking immediate steps to secure themselves. They all have a right to be apprised of the true condition of things known to the holder. So if the acceptance be conditional or partial, notice must be immediately given to the other parties to the bill, of the character of the acceptance offered: (*Chitty on Bills*, 179; *Same*, 196.)

But the question arises, was the note or memorandum on the face of the bill competent evidence of the presentation and dishonor by the drawee, to be left to the jury with the explanatory evidence as to the meaning of the abbreviations. We think it was.

SMITH
*vs*
ROACH'S EX'R.

in a suit thereafter by the holder against an endorser, he may show by any competent evidence, the fact of refusal of the drawer to accept, (1 *Peters*, 25; 2 *Ib.* 170,) and the short note of the Notary, who afterwards made out the protest for nonpayment, entered on the bill, is competent evidence to go to the jury.

Whatever may have been the meaning, purpose or effect of *noting* the bill for protest formerly, or when it was introduced, it seems now to be the general course of business, well understood among bankers and mercantile men, for the holder to present the bill for acceptance or payment, and if refused, hand it over to a Notary Public to be again presented and protested if dishonored. He again presents it and demands acceptance or payment, as the case may be, and if it be dishonored he *notes* it for protest, or makes a note on the bill, in an abbreviated form, similar to the note or memorandum on the face of the bill in question, indicating the demand and protest for non-acceptance or non-payment, and the *day* when the bill was dishonored and reasons for the dishonor, if any are given, to which the Notary signs his name, as in the case before us; and he afterwards, on the same day, and sometimes days afterwards, draws out the protest at full length, and in solemn form, under his notarial seal, the *noting* serving as his memorandum.

This being the usual course and general practice among Notaries, the *noting* has become an official act, entitled to consideration as evidence of the fact of presentation and demand by the Notary, and dishonor by the drawee; and of such demand and dishonor the drawer and en--

dorsers had a right to have notice. It is true it is said that a protest for non-acceptance of a foreign bill, is necessary, and cannot be supplied by *noting* or any other proof. This is true with respect to the holder's right to recover on such bill. To entitle him to sustain his action he must not only show notice of the dishonor, but also a protest regularly made out under the notarial seal, as such *protest* is essential to his action. But it does not follow that the defendant, against whom the recovery is sought, may not show, by any grade of evidence that is competent, that the bill was in fact presented and acceptance demanded and refused, and no notice given of the dishonor. The demand by the Notary and refusal by the drawee is the *fact* of dishonor, and of that *fact* it is the right of the drawer and endorsers to be apprised, and the duty of the holder to apprize them. And though it might be quite proper for the holder, who has possession and control of the bill, to be held to the strict proof of a protest, regularly drawn out, as the only evidence of the *fact* of dishonor, if the *fact* existed, and of which they had a right to be apprised, or to be excused from the payment of the bill, it would seem to be quite proper to allow them to prove the fact by any other evidence in their power. If they be not allowed to do so, then would the holder be enabled to escape from the consequences of his own negligence, by omitting to have the protest made out at length, or destroying or withholding it if it was.

The memorandum or note on the face of the bill, exhibited and relied on by the plaintiff as the evidence of his right to recover, shows that the bill had been in the hands of Campbell, who signed himself Notary Public, and was certainly Notary Public less than two months afterwards, when he protested the bill for non-payment, as such. From these facts it may be inferred that he was Notary Public at the date of the note or memorandum, and that the bill was placed in his hands as such, for demand and protest, and was demanded and refused, and noted for protest by him, officially, at the *time* of the refusal, and as a part of the *res gesta* of the transaction. As such, and being found on the face of the plaintiff's

bill, it was competent for the jury to consider of it as evidence of the fact of presentment and dishonor of the bill.

This evidence being excluded from the jury by the Circuit Court, it is the opinion of this Court that the judgment of the Circuit Court be reversed and cause remanded, that a new trial may be granted without the payment of costs.

*Underwood* for appellant; *Morehead & Reed* for appellees.