Nov. Term,
1851.

HENRY
v.
STATE BANK
OF INDIANA.

---

## HENRY v. THE STATE BANK OF INDIANA.

After the jury has been impanneled and the evidence heard, the plaintiff may, under the R. S. 1843, amend his writ and declaration by striking therefrom the names of any number of the defendants.

The notice of the protest for non-payment of a note payable at the branch at *Lawrenceburgh* of the state bank, stated that the note was presented, &c., "in the bank," for payment, &c. *Held*, that the words imported that the note was presented within banking hours.

The holder of a note payable at a chartered bank within this state, may, upon the note being protested for non-payment, notify all, or any part, of the indorsers of the fact, and render the indorsers thus notified liable for the payment of the note.

An indorser who has received due notice of the protest for non-payment of such a note, held by a bank, will not be discharged because a prior indorser was not thus notified, notwithstanding it was a usage of the bank to notify all indorsers of paper not paid at maturity, of protest.

ERROR to the *Dearborn* Circuit Court.

PERKINS, J.—*The State Bank of Indiana*, for the use of the branch at *Lawrenceburgh*, brought a joint action of assumpsit against *William V. Cheek* and five others, (among whom was *Aaron B. Henry*, the defendant,) the maker and indorsers of a promissory note. The defendants appeared and pleaded the general issue. A jury was impanneled and the evidence heard. Thereupon the plaintiff asked leave to amend by striking from the writ and declaration the names of all the defendants except *Henry*. Leave was granted; the amendment made; and, on motion, the jury was discharged and the cause continued to the next term at the plaintiff's cost. At that term, the cause was tried by a jury and the bank obtained judgment. A new trial was denied. The evidence is upon the record. The following is a copy of the note in suit:

"$300. *Lawrenceburgh, March* 15, 1849. Ninety days after date, I promise to pay to the order of *Edmund C. Cheek*, the sum of three hundred dollars, negotiable and payable at the *Lawrenceburgh* branch of the state bank of *Indiana*, for value received, without any relief whatever from valuation or appraisement laws. *Wm. V. Cheek*." Indorsed, "*Edmund C. Cheek, John F. Cheek, Simeon Vinson, A. B. Henry, William Huff*."

The demand of payment of the note and the protest for non-payment were duly proved. It was shown that a notice, containing the following statement, was given, on the day of protest, to the defendant, *Henry*, in person, and forwarded by mail to the several indorsers. "Please take notice that a note for 300 dollars, drawn by *Wm. V. Cheek* in favor of *Edmund C. Cheek*, or order, dated *Lawrenceburgh*, 15th day of *March*, 1849, payable ninety days after date, at the *Lawrenceburgh* branch of the state bank of *Indiana*, indorsed by you, was this day presented for payment in said branch, and by the undersigned, notary public, protested for non-payment. The holder thereof looks to you for payment." Signed by the notary.

The notice to *Vinson* was directed to *Wilmington, Dear-*

Nov. Term, 1851.

HENRY
v.
STATE BANK
OF INDIANA.

Saturday, December 6.

Nov. Term,
1851.

Henry
v.
State Bank
of Indiana.

*born* county, *Indiana*. It was proved that the notary inquired at the bank as to the direction of this notice, and was instructed to give it as he did. It was shown that *Vinson* resided, at the time, and had for from five to seven years previously, from five to seven miles from *Wilmington*, and within from one to two miles of another post-office called *Dillsboro*, whither he had removed from *Wilmington*, and at which place he received, sometimes, if not uniformly, his letters and papers; that he had been an indorser of notes in said bank for six years or more; that the bank understood his residence, when he commenced indorsing, to be at *Wilmington;* had never been informed that he had changed it; and had always had his notices of protest, of which there had been many, sent to the office at that place. The bank did not know that he received any of them, but the notes in reference to which the notices were sent, were renewed, the new notes being signed by him. It was proved that the bank was in the habit of having her notary notify all the indorsers on paper protested, and that this fact was generally known; but that this was done for the security of the bank, and not for the accommodation of the successive indorsers; " that when said bank received collections from abroad, it was her custom to hand such paper, when not paid, to a notary for protest, who inclosed all the notices to the different parties on such paper, in a notice to the bank or person sending such paper for collection; and when said plaintiff sent bills or notes to other banks abroad for collection, and they were protested, said plaintiff always received the notices to all parties inclosed under cover to said plaintiff, which, when received, were immediately forwarded by her to the several parties respectively." See as to this practice, *Ball* v. *Bank of Alabama*, 8 Ala. 590.—*Smith* v. *Roach*, 7 B. Mon. 17. Such was the evidence.

Objection is made—

1. To the permission given by the Court to amend in this case. The objection, we think, is answered by the case of *Taylor* v. *Jones*, 1 Carter's Ind. R. 17.

2. The judgment for costs in the final judgment is complained of. It is contended that the costs of the cause up to, and at, the continuance on account of the amendment, may be embraced in it; but there is no taxation of costs, either upon the continuance, or at the final judgment, on record, and hence we cannot say that any injury has been, or will be, done to the defendant below.

3. It is insisted that the notice of protest was insufficient, because it did not expressly state that the demand of payment was made "within or at the close of banking hours," on the day, &c.; but we think the notice was sufficient. It stated that the note was presented on the day, &c., "in said bank," for payment, &c. The reasonable import of the words used is, that the note was presented within banking hours and before the closing of the bank. See, on this point, Story on Bills, s. 390, and note.— Smith's Mer. L., p. 247, and note.

4. The fourth ground taken for the reversal of the judgment is, that the bank, by negligence, lost her remedy against the defendant below, *Henry*. It is not claimed that the bank was guilty of *laches* towards him directly, but indirectly, through negligence towards his immediate indorser. The argument is this: It is insisted that the custom of the bank, as testified to in this case, of notifying all the indorsers upon paper, had become the law of the bank, which the institution was bound to follow in every case; that that custom was not followed in this case—the notice to *Vinson* not being a legal one, as it was not sent to the post-office nearest his residence; that, consequently, he was discharged, by the negligence of the bank, from liability on the note, and, being the immediate indorser of the defendant, *Henry*, that discharge operated to his prejudice; from all which, the conclusion is drawn that *Henry* himself should be discharged from liability to the bank.

The custom of a bank, variant from the general rule of law upon the point, may become the law of the bank, as between the institution and its debtors, on the ground that contracts with it are supposed to be made by the parties

with reference to such custom. For example, if it is the uniform and known practice of a bank to allow four days of grace instead of three, the bank will be bound by that practice in a case where there is no express stipulation. *Maine Bank* v. *Smith*, 18 Me. R. 99. But, according to the general principles of commercial law, the bank, as the holder of this note, had a right to notify all the indorsers, and hold all of them, or any part of them she chose, liable to herself upon it; and had she notified them all and sued but her immediate indorser, the notice would have inured to the benefit of that indorser as against the prior ones. Or the bank had a right to single out any one indorser, notify and hold him alone liable to herself, and leave him to notify his prior indorsers and thus secure their liability over to himself; the indorsers subsequent to the one notified by the bank, being, of course, discharged. The bank was not bound to notify any indorser she did not attempt to hold liable; and it was the duty of every indorser notified to see to it immediately that indorsers prior to him were notified, for his own security. The bank thus having, by law, the right of pursuing either of two courses, we do not think the adoption of one or the other for any given time, should be regarded as the establishing of a custom precluding her from exercising the remaining one whenever she might choose. To so hold would, in fact, be abrogating a part of the law itself. The bank, in this case, was acting under a general principle of law and not adopting a custom aside from the law. *Chitty*, in his work on Bills, p. 530, 8th Ed., says: " It was once thought that notice of non-acceptance must, in all cases, be given to the *drawer* of the bill, and demand of payment made of him, or that, in default thereof, the indorsers would be discharged, notwithstanding they had regular notice, because, for want of notice to the drawer, the indorsers were without remedy against him, after they had successively taken up the bill. This opinion, however, so far as it related to *foreign bills*, was overruled in the case of *Bromley* v. *Frazier*, 1 Stra. 441, and in its relation to *inland bills*, in the case of *Heylyn et al.*

v. *Adamson*, 2 Burr. 669, and as to checks on bankers, in *Rickford* v. *Ridge*, 2 Camp. 537, on the principle, that to require a demand of the drawer or prior indorser, would be laying such a clog upon bills, as would deter every person from taking them; besides, the acceptor is primarily liable, and as the act of indorsing a bill is equivalent to making a new bill, every indorser thereby separately undertakes, as well as the drawer, that the drawee shall honor the bill, and the holder may consequently immediately resort to him without calling on any of the other parties; and it is the business of the indorser, as soon as he has received notice *himself*, to forward the like notice to the drawer, and all persons to whom he means to resort. See *Edwards* v. *Dick*, 4 Barn. and Ald. 212. However, it is admissible for the holder to give notice to *every* party as soon as he can ascertain his residence, for otherwise he will be without remedy, unless some other party to the bill has given him notice, in which case such notice may inure to his use." Story on Bills, s. 381.

The view we have taken of the particular point now under examination, settles the question raised, to-wit: whether *Henry* has been discharged by the act of the bank, and determines his liability, irrespective of the validity of the notice to *Vinson*, and we do not think, therefore, that we are required, even under our present constitution, to volunteer an opinion as to that. What we have said also answers the objections made to the instructions given, and renders it unnecessary that we should further extend this opinion.

*Per Curiam.*—The judgment is affirmed, with 1 *per cent.* damages and costs.

*A. Brower*, for the plaintiff.

*P. L. Spooner*, for the defendant.