*Wm. K. Marshall*, and *R. M. Patrick*, for appellant.

---

## JUDAH v. THE TRUSTEES OF VINCENNES UNIVERSITY.

NEW TRIAL—STATUTE CONSTRUED.—The Statute, 2 G. & H. 214, which declares that "not more than two new trials shall be granted to the same party in the same cause," simply means that where three juries have concurred in finding the matters actually in litigation against a party, the courts shall not disturb the verdict on his application. Page 275.

SAME.—A new trial resulting from the action of the Supreme Court, as a consequence of its decision that the issues which had been previously tried were not such as fairly to determine the rights of the parties, and were so defective as to leave the real cause actually undetermined, is not "a new trial in the cause," within the meaning of the statute. Page 275.

DEMURRER TO REPLY—PRACTICE IN THE SUPREME COURT.—The Supreme Court can not reverse a cause on account of error in overruling a demurrer to a reply, unless the reply tenders an immaterial issue. Page 275.

CHANGE OF VENUE—JURISDICTION.—Where the venue is changed by the agreement of parties, the agreement entered of record in the court from which the change is made, gives jurisdiction of the persons of the parties to the court to which the venue is taken. Page 275.

PLEADING—REDUNDANT MATTER.—It is the duty of the court below to strike out all redundant matter in the pleadings; but the Supreme Court will not reverse a case because the pleading contains redundant matter. Page 276.

SAME—ARGUMENTATIVE DENIAL.—It was assigned for error that the court below overruled a motion to strike out a paragraph of the reply, on the ground that it was merely an argumentative denial.

*Held*, that the objection goes merely to the form of the pleading, and does

Judah *v.* The Trustees of Vincennes University.

not affect the substantial rights of the parties, and can not therefore be heard in this court. Page 276.

PLEADING.—Suit by the *Trustees of the Vincennes University* against *Judah* to to recover the value of certain bonds of the state of *Indiana,* which it was alleged he had in his hands as the agent and attorney of the University, and which he refused to deliver on demand, but had sold and converted to his own use. Answer, among other things, that the University was indebted to him for professional services in a suit against the state, by which the bonds were obtained, under a special contract evidenced on the part of the University by a resolution of its board of trustees, made and entered on its records *February* 8, 1853, to the effect that for such services he be allowed one-fourth of the net proceeds of the suit, etc., and that of the said bonds he retained $16,625, being the one-fourth part as specified in the resolution. To this part of the answer the University replies, that at the date of the resolution *Judah* was secretary of the board of trustees, and falsely entered the resolution on the records of the board of trustees; that the resolution actually adopted provided that for *all* his legal services and outlays he should be allowed one-fourth, etc.

*Held,* that this reply was simply a denial of so much of the answer as alleges the adoption of the resolution, or, in other words, the making of the contract.

*Held,* also, that neither argumentativeness nor surplusage justifies a demurrer under our system of pleading. Page 277

ATTORNEYS—DUTIES OF.—An attorney, in contracting with his client, must act with the most scrupulous good faith and honesty, and put the client on equal terms with himself. Page 278.

SAME.—The third paragraph of the reply avers that appellant, by representations which he knew to be false, as to the amount which would be recovered in the suit, and by threatening to withhold and destroy valuable and important documents relating to the suit in which he was acting as attorney, induced the passage of the resolution of *February,* 1853.

*Held,* that the reply avers a state of facts which will, if true, prevent an attorney from taking any thing by the contract embraced in the resolution, and is good upon demurrer. Page 278.

PLEADING.—Appellant, in his answer, claimed $4,500 for his services and expenses necessarily incurred in procuring the passage of an act of the legislature, and that such expenditures were authorized by a resolution of the board of trustees. Reply, that the expenditures and services were unlawful and corrupt, and were used and squandered to corrupt and bribe the legislature, without the consent or knowledge of said trustees; that they were unnecessary and useless, and the act was honestly passed, etc.

*Held,* that the reply is an argumentative denial of the allegation in the answer that the expenditures were made in good faith, and were necessary to accomplish the objects sought by the University, and is good upon demurrer. Page 279.

Judah v. The Trustees of Vincennes University.

COMPLAINT.—The test of what is material in the complaint will be furnished by the response to the question, What, under the general denial, must the plaintiff prove to secure a verdict in his favor? Page 281.

PRACTICE—THE RIGHT TO OPEN AND CLOSE.—The common law rule, that the plaintiff has a right to begin whenever he has any thing to prove, either as to the facts necessary to obtain a verdict or as to the *amount of damages*, is changed by the code. Page 283.

SAME.—The party upon whom rests the burden of the issues has, under the code, the right to open and close the case. Page 284.

SAME—BURDEN OF THE ISSUES.—The party having the burden of the issues is the party who, if no proof is offered, will be cast in the suit. Page 284.

SUPREME COURT—QUESTIONS IN THE RECORD.—The reasons relied upon for a new trial are not questions in the record, in the meaning of the constitutional provision requiring the Supreme Court to state in writing each question arising in the record, and the decision of the court thereon, but are arguments upon the question, to be considered so far as may be necessary to decide it. Page 285.

APPEAL from the *Knox* Circuit Court.

FRAZER, J.—1. There is a motion to dismiss this appeal or to affirm the judgment below, on the ground that two new trials have been already granted to the appellant.

In support of this motion, the provision of the code is relied upon as conclusive, which declares that "not more than two new trials shall be granted to the same party in the same cause." 2 G. & H. 214.

One new trial was granted, on the appellant's motion by the consent of the other party. Subsequently there was a trial of the same issues, which resulted in a verdict and judgment against the appellant, who appealed to this court. Here the judgment was reversed, on account of various erroneous decisions of the court below, overruling demurrers of the appellant to sundry paragraphs of the reply to his answer; the cause having been remanded, the complaint was amended; an answer was filed thereto, and issues were finally made and tried, all of which resulted in another judgment against the appellant, and from that judgment he now appeals.

The motion under consideration assumes that the former reversal of the case by this court was "granting a new

trial in the cause." The opinion delivered on that occasion will be found in 16 Ind. 56. A new trial resulted from the action of this court as a consequence 'of its decision, that the issues which had been previously tried were not such as were necessary to fairly determine the rights of the parties. We never do and never can reverse a cause under our practice on account of error in overruling a demurrer to a reply, unless the reply tenders an issue, the decision of which is immaterial. Then the reversal was really because the cause had not been tried at all; but the appellant had been forced to take issue upon a reply so defective that the finding of that issue against him left the real cause itself actually so far undetermined that a judgment against him upon the finding was not authorized. Such a trial, though it might be repeated a score of times, ought not to settle any thing in the suit, and we can not regard it as " a trial in the cause," within the meaning of the statute. It would be monstrous to hold that the legislature meant to enact that three verdicts against a party, neither of which determines the real controversy, shall forever bar him from having a trial of the matter actually in litigation. Such is not the spirit of the statute, though a very literal construction of it might justify such an interpretation. The statute simply means that when three juries have concurred in finding the matters actually in litigation against a party, the courts shall not disturb the verdict on his application. We can not sustain the motion.

2. The venue was changed from *Sullivan* to *Knox* by agreement of parties, and then the appellant specially appeared in the *Knox* Circuit Court to object to its jurisdiction, and thereupon moved to dismiss the cause for want of jurisdiction. The motion was overruled, and this is assigned for error.

The agreement entered of record in the *Sullivan* Circuit Court gave the *Knox* Circuit Court jurisdiction of the person of the appellant, and the law gives it jurisdiction of the

subject-matter of the suit. The point has nothing like either principle or authority to support it.

3. There was a motion overruled to strike out a large amount of matter from the complaint. This is assigned for error.

We do not fully concur in the proposition of the appellee, that the pleader ought to be allowed to state his case in his own way, in any sense which shall license him to state more than his case; nor yet that the courts ought to feel any delicacy about striking out redundant matter. It is rather the duty of the judges at *nisi prius*, we think, to exclude all such matter, and to lop off freely in all proper cases. Otherwise that brevity, which it was one design of the code to introduce, will become, under our constitution, which provides in effect that learning is not necessary to make a lawyer, the most intolerably prolix and cumbersome, not to say ridiculous, system of pleading that the world has ever known; but the remedy is wholly in the hands of the courts below. We can not reverse a case because a pleading contains redundant matter. It can not affect the substantial rights of the opposite party, and for that reason the statute has prohibited us from interfering. 2 G. & H. 122.

4. A motion to strike out a paragraph of the reply, on the ground that it was merely an argumentative denial, was overruled, which is the next error assigned.

This point is not well taken. The objection goes merely to the form of the pleading, and the statute already cited forbids us listening to it.

5. The action was to recover the value of certain state bonds of the University, amounting to $25,000, which it was alleged the appellant had in his hands as its agent and attorney, and which, on demand, he refused to deliver, but had sold and converted to his own use. The defendant below answered, among other things, that the University was indebted to him for professional services as attorney in a suit against the state, by which the bonds

were obtained, under a special contract, evidenced on the part of the University by a resolution of its board of trustees, made and entered on its records *February* 8, 1853, to the effect that for such services he be allowed one-fourth of the net proceeds of the suit, to be paid to him proportionally out of such proceeds, as the same should be paid into the treasury of the board; that of said bonds he retained $16,625, being one-fourth, as specified in the foregoing resolution. To this part of the answer the. University, by the second paragraph of their reply, say that, at the date of the resolution, *Judah* was secretary of the board of trustees, and falsely entered the resolution on the records of the board of trustees; that the resolution which was actually adopted provided, that for *all* his legal services and outlays (there were numerous other suits conducted by *Judah* as attorney for the University, and services and expenditures as agent) he should be allowed one-fourth, etc. But that *Judah* fraudulently, and without the knowledge or assent of the board, entered the resolution in form as stated in the answer.

Now, this reply is simply a denial of so much of the answer as alleges the adoption of the resolution, or, in other words, the making of the contract by the trustees. It is argumentative to be sure, and it needlessly explains how a resolution never made by the trustees comes to be found on their records. This is surplusage. But neither argumentativeness nor surplusage justifies a demurrer under our system of pleading. There was therefore no error in overruling the appellant's demurrer to the second paragraph of the reply.

6. The third paragraph of the reply avers that the appellant, by false representations, which he knew to be false, of the amount which would be recovered in the suit, and by threatening to withhold and destroy valuable and important documents, papers, and books relating to the suits in which he was acting for it as attorney, and

other valuable documents of the University, all of which he had in his custody, induced the passage of the resolution of the trustees of *February*, 1853.

There was no error in overruling a demurrer to this paragraph. It is a doctrine of the law, so well supported by every demand of justice and policy, and so universally sustained by the cases, that an attorney, in contracting with his client, must act with the most scrupulous good faith and honesty, and put the client on equal terms with him, that a citation of authorities is needless. If this paragraph of the reply does not allege a state of facts which will, if true, prevent the attorney from taking any thing by the contract embraced in the resolution which he pleads, then it would be in vain to attempt to accomplish that object by averment.

7. By the answer, the appellant claims for his services and personal expenses in procuring the passage of an act of the legislature in 1855, by authority of which the judgment obtained was adjusted and paid by the delivery of bonds, and for $4,500, "expended in procuring the passage thereof; that said expenditure was made in good faith, and was necessary in procuring aid and assistance and counsel, without which the act could not have been passed and sustained against propositions for its suspension; that this was done under authority of a resolution of the trustees of the University in writing, authorizing him to attend the legislature, to procure such legislation, and to expend whatever money might be necessary to secure a settlement," out of the University's share, etc.

The reply to this (being the fifth paragraph of the reply) is, that the expenditure and services were unlawful and corrupt, and were used and squandered to corrupt the legislature, and to exert upon it a secret, undue, and personal influence by lobbying; that the same was not necessary to obtain the settlement which was had by the passage of the act; that the act was honestly passed, and

was not secured by the corrupt means used for that purpose, etc.

We deem the reply but an argumentative traverse of the allegation in the answer, that the services and expenditure were used in good faith, and were necessary to accomplish the object sought by the University; and we are therefore of opinion that there was no error in overruling a demurrer to it.

8. The appellant moved for a new trial, assigning various causes. The overruling of this motion is assigned for error. Inasmuch as this assignment of error embraces several others, we do not give them other consideration than that which they necessarily receive in determining whether a new trial ought to have been granted. They are of such a character that a failure to urge them in support of a motion for a new trial would have waived them, according to repeated decisions of this court.

*First*, the appellant claimed the right to open and conclude the case, but was not permitted to do so. This presents a question which has given us much trouble. It seems to us not improbable that there was an effort, skillfully conducted on both sides, so to frame the pleadings as to secure the opening and closing, and one result of this is a record largely extended by folio upon folio of argumentative denial and surplusage.

We have already stated what we consider the nature of the suit and the whole substance of the complaint; but the averments that *Judah* holds and has converted the state bonds belonging to the University, and on demand refuses to deliver them, constitute scarcely a tithe of the volume of the complaint. It gives a history, somewhat circumstantial, of the manner in which the University became the owner of the bonds, showing that it had, in 1843, claimed a certain township of land, which the state also had previously claimed, and had sold a large part of it; how much the state had thus realized, and what it had done with the proceeds; that the University employed

*Judah* and another as attorneys in the matter; that it was doubtful what was best to do; the nature and terms of the contract with *Judah;* how it was evidenced, and how much was paid to him thereon; what he then did as such attorney, and, in some instances, why he did it, etc.; that the bonds in controversy came into his hands, as agent and attorney of the University, as the fruits of the litigation; and, finally, that when they were demanded of him he "wrongfully and falsely" pretended that he was entitled to them as payment for his services. It is claimed that these averments were proper, with a view to obtain ten per cent. damages, and a judgment without stay or appraisement, under section 779 of the code, which provides for such damages and such a judgment in an action against an attorney for "money withheld" from his client. But this suit was not for money withheld, and this statute, being penal, is not to be extended by construction to cases not within its terms, taken in their ordinary and usual sense.

It will be seen that the complaint anticipates what *Judah's* defense will be, and alleges that it is wrongful and false. This, it is insisted, was according to the usual frame of the bill in chancery, and therefore proper, because our system of pleading is somewhat like the pleadings in chancery; but this doctrine is not sound. There was a good reason for the practice in chancery proceedings, which does not exist under ours. The bill was to be answered under oath, and that answer was evidence so far as it was responsive to the bill. By anticipating the defense, and then alleging facts which would destroy it, and requiring the defendant to answer, as to these facts, fully under oath, the orator, if his allegations were true, often obtained his decree *pro confesso*, or if the defendant answered truly, he could safely set the cause down for hearing upon bill and answer, and obtain his relief without further trouble.

Our statute gives a very simple rule by which to determine what is proper to be contained in a complaint; to-wit: "A statement of the facts constituting the cause of

action in plain and concise language, without repetition."
2 G. & H. 71. More than this is redundant. In this case,
we think, the test of what is material in the complaint
would be furnished by the answer to the question, What
under the general denial must the plaintiff have proved to
secure a verdict in his favor? Having shown that the bonds
were his client's property, that they were in the defendant's
possession, that on demand he failed to deliver them and
their value, we think any lawyer would have properly
rested; we must therefore regard the complaint as stripped
of every thing but the allegations which would have ad-
mitted this evidence.

The answer admits all these material allegations, and its
direct or argumentative denial of every thing else in the
complaint must be regarded as surplusage. It sets up
affirmative matter, by way of set-off and counterclaim, con-
sisting of claims for money expended for the plaintiff as
agent by its authority, and for services and expenses as
agent and attorney, about the subject-matter of the bonds
and litigation which was finally settled, and by which
settlement the plaintiff became the owner of the bonds,
and they came into the defendant's hands as its attorney
and agent.

To this there is a reply in six paragraphs, to the fourth
and sixth of which demurrers were sustained. The *first*
paragraph alleges payment of the claims mentioned in
the answer. The *second* paragraph, we have seen, argu-
mentatively denies a part of the answer; it directly denies
all the rest of it. It therefore puts the defendant on
proof of the whole answer. The *third* paragraph we have
decided to be a good confession and avoidance of part of
the answer, and it denies all the answer not avoided by
the new matter. The *fifth* paragraph is, as we have de-
termined, an argumentative denial of so much of the an-
swer as it purports to reply to.

In brief, the issues stand thus: the complaint is con-
fessed and avoided; the answer is wholly denied, and

also confessed and avoided. It is quite apparent, in this condition of the pleadings, that, if no evidence whatever had been offered, the plaintiff would have taken a verdict for nominal damages; and that if he wished to recover actual damages, he must have offered evidence of the value of the bonds.

The rule of the common law, as to the right to begin, was very unsettled in *England* formerly. No satisfactory rule, applicable to a case like this, could until recently be deduced from the cases in that country. The *nisi prius* cases were confused and inharmonious; and as an impression prevailed that the course taken by the judge who presided at the trial was not subject to revision on error, his ruling generally stood without further question. The general rule was there held to be, that the party having the burden of the issues should open and close; but where the damages claimed by the plaintiff were unliquidated, though the defendant held the affirmative of the issues, it became a vexed question, in view of contradictory decisions, which party had the right. Finally, in 1845, the Court of Queen's Bench, after able argument and grave consideration, in *Mercer* v. *Whall*, 5 A. & E. 447, (48 E. C. L. 447,) determined the rule to be that the plaintiff should begin "whenever he has any thing to prove, either as to the facts necessary for his obtaining a verdict, or as to the *amount* of damages to which he conceives the proof of such facts may entitle him." This case, we believe, settled the question in *England*.

In this country the question seems, at the adoption of our code, to have been an open one; but generally deemed a matter of discretion, to be ordered by the judge at the trial. 1 Greenl. Ev., sec. 76. In this state it was frequently under discussion in the lower courts, but had never been passed upon by this court. Under these circumstances, we adopted our code, which enacts that the party on whom rests the burden of the *issues* shall begin.

The counsel for the appellee assumes that this statute

does not change the common law rule as declared in *Mercer* v. *Whall*, and in this he is supported by a *dictum* of the learned judge who delivered the opinion in *Howard* v. *Kisling*, 15 Ind. 83. It is clear that the common law, as applicable to that case, is not changed, and we are justified in assuming that this is all that Mr. Justice *Davison* meant to say. There is also an incidental remark, by Mr. Justice *Perkins*, in *The City of Aurora* v. *Cobb*, 21 Ind. 492, recognizing *Mercer* v. *Whall* as good law here, though our statute seems not to have been taken into consideration. But the question was not in that case; for there the plaintiff had no proof to offer as to damages, the amount being expressly admitted; and the defendant had the affirmative of the issues.

We are clear that the statute changes the rule of the common law, as laid down in *Mercer* v. *Whall*. The term "*issue*," used in that statute, has a technical meaning. The statute itself leaves no room for question as to that meaning. Thus, Sec. 316: "*Issues* arise on the pleadings where a fact, or conclusion of law, is maintained by one party, and controverted by the other. They are of two kinds: *first*, of law; *second*, of fact." Sec. 318: "An *issue* of fact arises: *first*, upon a material allegation of the complaint denied by the answer; *second*, upon a set-off or counterclaim presented in the answer, and denied by the reply; *third*, upon material new matter in the reply, which shall be considered controverted . . without further pleading." So, also, Blackstone, Bouvier, and Chitty define the term, though more generally.

Now, the amount of damages alleged under our code is not admitted, though the answer be by way of confession and avoidance. But there is no *issue* upon that subject, any more than if the defendant had made default; and in that case, upon the execution of a writ of inquiry, it has never been supposed that the jury are to try an *issue*; they are sworn simply to assess the damages. Our code is, in large measure, a copy of that of *New York*; but the clause

under consideration is not found in the code of *New York*, and it is not unreasonable to suppose that it was inserted in ours to put at rest a question which, as we have seen, was not then settled in this country. Its language is exceedingly well chosen to avoid troublesome questions of construction : "The *burden* of the issues," instead of "the *affirmative* of the issues." The latter phraseology, though often employed in the books, would, in cases where the issues were numerous, and each party had affirmatives, furnish no intelligible rule. But the party having "the *burden* of the issues," is readily understood to be the party who, if no proof whatever be offered, will be cast in the suit.

We have given this question fuller elaboration than we might otherwise have done, because of a request, in the able brief of the counsel for the appellee, that we should reconsider the case of *McLees* v. *Felt*, 11 Ind. 218. That was replevin, the answer was in avoidance, and the reply a denial. It was held that the defendant should begin; but the decision was placed upon common law grounds, and the statute seems not to have been considered. We think that the judgment in that case was right; but that, if based upon the statute instead of the common law, it would possibly rest upon a surer foundation.

Being of opinion that the court below ought to have granted a new trial, because of its refusal to permit the appellant to begin, we must for that reason reverse the case.

There remain forty-one other reasons for a new trial embraced in the motion which was overruled, and which are urged in the brief. Many of them raise questions of some interest, and to decide some of them would probably require considerable investigation, for they are not generally very fully argued in the briefs, though this remark is not applicable to the questions upon which we have already passed. They have been argued with much

ability. Is it our duty to consider the remaining reasons urged for a new trial? We are required by the constitution to state in writing each question arising in the record, and our decision thereon. We must obey this command of the fundamental law. But the magnitude of the labor before us, and the fearful length to which this opinion will be extended, if we are yet to examine the remaining reasons for a new trial, has induced us to consider the nature of this constitutional duty.

The question in the record is, Did the court below err in refusing a new trial? We have decided that question, and have, we think, therefore done all that we are required to do. The reasons relied upon for a new trial, we regard not as questions in the record, but arguments upon the question, to be considered so far as may be necessary to decide the question. This course is according to the practice of the court heretofore, and is but adopting views, which we deem sound, which have been from time to time expressed by our predecessors. 9 Ind. 367; 8 Ind. 464, 335, 40; 3 Ind. 221.

The judgment is reversed, with costs; cause remanded for a new trial.

*J. E. McDonald* and *A. L. Roache,* for appellant.
*David McDonald* and *W. E. Niblack,* for appellee.