## HEILMAN *v.* SHANKLIN ET AL.

LIBEL.—*Bribery of Voters.—Election Law.*—A publication in a newspaper, charging the hiring, buying or offering to buy, directly or indirectly, or the furnishing of money or other means to hire, buy or induce, any person to vote for any candidate for a public office, charges the felony defined by section 4 of the election law of March 8th, 1873, 2 R. S. 1876, p. 453, and is libellous.

SAME.—*Defence.—Justification.*—Under section 87 of the practice act of this State, the defendant may allege, as an absolute bar to an action for libel, that the matter alleged to be libellous is true.

SAME.—*Answer.*—In an action for an alleged libellous publication, charging the plaintiff with bribery or attempted bribery of voters, an answer alleging that the plaintiff, directly or indirectly, either hired or bought, or furnished his money to others, or permitted the same to be used, to hire, buy or induce, any person named, or alleged to be unknown, to vote for a candidate for a public office, is sufficient.

SAME.—It is immaterial whether the person alleged to have been bribed was or was not a legal voter.

SAME.—*Open and Close.—Burden of Proof.*—Where, in an action for libel, the answer is in justification only, the defendant has the burden of proof, and is entitled to the open and close.

Heilman *v.* Shanklin *et al.*

SAME.—*Mitigation of Damages.*—*Evidence.*—Where matter, either in mitigation or justification, is pleaded, either or both may be given in evidence.

SAME.—*General Rumor.*—A general rumor of the truth of the alleged libel is matter in mitigation, and may be given in evidence, in such case, under a plea of justification.

SAME.—*Treating.*—The "treating" of voters is not prohibited by law in this State, and is not necessarily felonious.

SAME.—*New Trial.*—*Cause for.*—In an action for libel, a cause for a new trial, assigning the admission of evidence of the defendant's intention in *writing* the alleged libellous article, raises no question as to evidence of his intention in. *publishing* it.

SAME.—*Motive of Defendant.*—Evidence of the motive of the defendant in such case is admissible in mitigation of damages.

SAME.—*Order of Introducing Evidence.*—A party to an action may, as a general rule, introduce his evidence in whatever order he chooses.

SAME.—*Waiver.*—*Harmless Error.*—Where, in an action for libel in publishing an article charging the bribery of voters, the defendant, under a plea of justification, introduces evidence of bribery of voters by others, coupled with the statement that he proposes to connect the same with the plaintiff, or that the same should be struck out, and, after the evidence is in, the plaintiff does not ask that it be struck out, he can not afterward complain of its admission.

From the Posey Circuit Court.

*C. Denby, D. B. Kumler* and *V. Bisch,* for appellant.

*A. Dyer, W. P. Edson, Shackelford & Richardson* and *Hovey & Menzies,* for appellees.

HOWK, J.—In this action, the appellant, as plaintiff, sued the appellees, as defendants, in the Vanderburgh Circuit Court.

The appellant's complaint was in three paragraphs. As the several paragraphs contain full and fair statements of the appellant's alleged causes of action against the appellees, we set them out at length, as we find them in the appellant's brief, in this court, as follows:

"Paragraph 1. The said plaintiff, William Heilman, by Denby & Kumler, his attorneys, complains of the said defendants, John G. Shanklin, George W. Shanklin and Sidney D. Terry, and says, that, on the 20th day of September, 1874, and on divers other days thereafter, and up to the date of bringing this suit, the said defendants were

the owners, publishers and editors of the Evansville
Daily Courier, a daily newspaper published in the city of
Evansville, Vanderburgh county, and State of Indiana;
that said Evansville Daily Courier, printed and published
as aforesaid, is a newspaper of general and extensive circu-
lation throughout portions of the States of Indiana, Illinois
and Kentucky, and the said plaintiff avers, that, for a long
time before, and at the time of, the committing of the griev-
ances hereinafter mentioned, he was a resident and citizen
of Evansville, county and State aforesaid, and had always
maintained a good character and name among his neigh-
bors and acquaintances, for moral worth, honesty and integ-
rity, and had never been suspected or accused of the crime
of bribery, or any other felony; yet the said defendants,
well knowing the premises, and maliciously intending to
injure the said plaintiff and to bring him into public scan-
dal, disgrace and disrepute among his neighbors and ac-
quaintances, did, on the 20th day of September, 1874,
falsely, wickedly and maliciously publish, and cause to be
published, in the said Evansville Daily Courier, of and
concerning the said plaintiff, a certain false, scandalous
and malicious libel, containing, among other things, the
false, malicious, defamatory and libellous matter follow-
ing, that is to say:

" ' A remarkable and unparalleled case is presented in this
Congressional District; it is a man running for Congress,
not on any platform or any well defined issue before the
people, but simply on beer and bribery, and, what is more
remarkable still, he has hopes of succeeding. " To this
complexion have we come at last:" that a candidate for
a high and responsible office, one who in the halls of Con-
gress will represent and express the wishes of thirty thou-
sand voters, is to be placed there simply through the in-
fluence of beer and money, or, more properly speaking,
for it reduces itself to that, through beer and bribery.
But, even in these degenerate days, we have too much faith
in the dignity and manhood of the people to believe that

one can succeed through these means. That there are some who will sell their birthright for a "mess of pottage" is, alas, too true, but that there are many such we do not believe. And we hope and expect that this fact will be demonstrated by the result of the Congressional election in the First District of Indiana.'

" Thereby meaning that the said plaintiff was guilty of a felony—thereby meaning that the said plaintiff was guilty of bribery—thereby meaning that the said plaintiff had, with money, hired voters of the First Congressional District of Indiana to vote for him, the said plaintiff, as a candidate for Congress from said district—thereby meaning that said plaintiff had paid money to voters of the First Congressional District of Indiana, in order to induce them to vote for him, the said plaintiff—thereby meaning that said plaintiff had bought with money, or other things of value, the votes of divers and singular of the voters of the said First District of Indiana, for him, the said Heilman, for Congress, the said Heilman then and there being a candidate for Congress from the First District of Indiana; by means whereof the said plaintiff hath been greatly damaged and injured in his good name, character and reputation, to the damage of the said plaintiff of ten thousand dollars. Wherefore he prays judgment against the said defendants for ten thousand dollars, his damages so as aforesaid sustained.

" Paragraph 2. The said plaintiff, William Heilman, further complaining of the said defendants, John G. Shanklin, George W. Shanklin and Sidney D. Terry, says, that the said defendants, on the 23d day of September, 1874, and on divers other days thereafter, and up to the beginning of this suit, were the owners, publishers and editors of the Evansville Daily Courier, a daily newspaper printed and published in the city of Evansville, county of Vanderburgh and State of Indiana; that said Evansville Daily Courier, printed and published as aforesaid, is a newspaper of general and extensive circulation through-

·out portions of the States of Indiana, Illinois and Ken-
tucky; and the said plaintiff avers, that, for a long time
before, and at the time of, the committing of the wrongs
.and injuries hereinafter mentioned, he was a resident and
·citizen of the city of Evansville, county and State afore-
said, and had always sustained, and does now sustain, a
good character and name among his neighbors and ac-
·quaintances, for moral worth, integrity and honesty, and
had never been implicated, accused or charged of or with
the crime of bribery, or any other felony. Yet the said
.defendants, well knowing the premises and maliciously
intending to injure the said plaintiff, and bring him into
public scandal, disgrace and disrepute among his friends
and acquaintances, did, on the 23d day of September,
1874, falsely, wickedly and maliciously publish, and cause
to be published, in the said Evansville Daily Courier, of
and concerning the said plaintiff, a certain false, scandal-
ous and malicious libel, containing, among other things,
the false, malicious, defamatory and libellous matter fol-
lowing, that is to say:

### "' OUR GAUNTLET.

"'Like that distinguished politician, William Heilman,
"there are some things we can't stand." One of those
"things" is the cowardly attempt of corrupt editors to
bully us. Another is the loud mouthed threats of can-
didates for office to bring suit against this paper for libel.
We invite either the hypocrites who know that this Con-
gressional race is being made on the platform of beer and
bribery, or Mr. William Heilman, who was nominated
because it was believed that he would use his money to
induce people to vote for him, and who has used his
money to induce people to vote for him, to bring suit for
libel against this paper, or against either of the proprie-
tors or editors. If this is not sufficient ground for an ac-
tion on their side, let them state the terms in which they
wish an editorial article written, charging that they have

furnished money to be used to gain votes for William Heilman, for Congress, and we will employ those terms. Come, virtuous gentlemen of the Journal, and come you, too, pure-minded candidate for Congress, and pick up this glove. The law of the State of Indiana, passed by a Republican Legislature, says, that any person who, " either himself or through any one else," furnishes any money or other means, to be used to induce any person to vote for any candidate for office, " shall be deemed guilty of a felony." We specifically charge that William Heilman has furnished money to be used to gain votes for him. Now, if he does not wish to stand before this community in the attitude of confessing the felony, let him call upon us to prove what we have written, before the court.'

" The said Heilman, then and there being a candidate for Congress, and a candidate for the office of Congressman of the United States from the First Congressional District of Indiana, by means whereof the said plaintiff hath been greatly damaged and injured in his good name, character and reputation, to the damage of said plaintiff of ten thousand dollars. Wherefore the said plaintiff prays judgment against the said defendants for ten thousand dollars, his damage sustained as aforesaid.

" Paragraph 3. The said plaintiff, William Heilman, further complaining of the said defendants, John G. Shanklin, George W. Shanklin and Sidney D. Terry, says, that the said defendants, on the 23d day of September, 1874, and on divers other days thereafter, and up to the beginning of this suit, were the owners, publishers and editors of the Evansville Daily Courier, a daily newspaper printed and published in the city of Evansville, county of Vanderburgh and State of Indiana; that the said Evansville Daily Courier, printed and published as aforesaid, is a newspaper of general and extensive circulation throughout portions of the States of Indiana, Illinois and Kentucky; and the said plaintiff avers, that, for a long time before, and at the time of, the committing of the grievances here-

inafter mentioned, he was a resident of the city of Evansville, county and State aforesaid, and had always sustained a good character and name among his neighbors and acquaintances for moral worth, honesty and integrity, and had never been suspected, accused or charged of or with the crime of bribery, or any other felony; yet the said defendant, knowing the premises, and maliciously intending to injure the said plaintiff and to bring him into public scandal, disgrace and disrepute among his neighbors and acquaintances, did, on the 23d day of September, 1874, falsely, wickedly and maliciously publish, and cause to be published, in the said Evansville Daily Courier, of and concerning the plaintiff, a certain false, scandalous and malicious libel, containing, among other things, the false, malicious, defamatory and libellous matter following, of and concerning the said plaintiff, that is to say: 'And who,' meaning the said plaintiff, William Heilman, 'has used his money to induce people to vote for him,' meaning the said plaintiff, who was then and there a candidate for Congress from the First Congressional District of Indiana, meaning that the said Heilman was guilty of a felony, namely, bribery, in this, that the said Heilman had used his money to induce divers and singular of the voters of said district to vote for him, the said Heilman, then and there being a candidate for the position as aforesaid, from the district aforesaid. 'We,' meaning the said defendants, 'specifically charge, that William Heilman,' meaning the said plaintiff, William Heilman, who was then and there a candidate for the Congress of the United States from the First Congressional District of Indiana, and who was then and there a candidate for office, to wit, the office of Congressman from said district, was guilty of a felony, namely, bribery, in this, that he, the said Heilman, was hiring, buying, and offering to hire and buy, by himself and others, and had furnished money and other things of value, and had permitted his money and other things of value so to be

used, to hire, buy and induce certain persons of said district to vote for him, the said Heilman, who was then and there a candidate for .office, as aforesaid, by means whereof the said plaintiff hath been greatly damaged and injured in his good name and reputation, to the damage of said plaintiff of ten thousand dollars. Wherefore the said plaintiff prays judgment against the said defendants for ten thousand dollars, and all other proper relief.

> " DENBY & KUMLER,
> " Attorneys for Plaintiff."

On the appellees' application, the venue of this cause was changed to the court below.

The appellees jointly answered the appellant's complaint, in forty-two separate paragraphs; but the first paragraph of answer, being the general denial, and the twenty-ninth paragraph, were withdrawn before the trial of the cause, leaving forty affirmative paragraphs of answer in the record.

To each of these paragraphs of answer the appellant demurred, upon the ground that it did not state facts sufficient to constitute a defence to the action; which demurrers were severally overruled ·by the court, and to these decisions the appellant excepted. The appellant then replied, by a general denial, to all the paragraphs of appellees' answer.

The issues joined were tried by a jury in the court below, and a verdict was returned for the appellees.

The appellant's written motion for a new trial was overruled, and to this decision he excepted; and judgment was rendered by the court on the verdict, in favor of the appellees and against the appellant, for the costs of suit.

In this court, the appellant has properly assigned, as alleged errors, the several decisions of the court below, in overruling his separate demurrers to each of the affirmative paragraphs of the appellees' answer, and in overruling his motion for a new trial.

We will first consider and decide the several questions

presented by the decisions of the court below, in overruling
the appellant's demurrers to the affirmative paragraphs of
appellees' answer; and, in so doing, we will take up these
several questions in the same order in which they have
been presented by the appellant's learned attorneys, in
their argument of this cause, in this court. Before do-
ing so, however, we may properly remark, that each one
of the forty paragraphs of the appellees' answer, remain-
ing in the record, was an answer in justification of the pub-
lication by them, in their newspaper, of the matters alleged
by the appellant to be "false, malicious, defamatory and
libellous." We find it necessary, also, to the proper pre-
sentation of the questions. to be considered and decided,
that we should give the substance, at least, of each one
of these forty paragraphs of answer, which we do, as fol-
lows :

The second paragraph charged, that, at the general elec-
tion of 1874, the plaintiff was a candidate for Congress,
prior to the publication complained of, and in Vander-
burgh county, in 1874, he furnished to John Kauffer ten
dollars and fifty cents to be used in supplying beer to per-
sons in said district, to induce them to vote for the plain-
tiff.

The third paragraph charged, that, at the general elec-
tion of 1874, the plaintiff was a candidate for Congress,
and that, prior to the election, at and in Vanderburgh
county, in 1874, plaintiff furnished a glass of beer to a per-
son unknown, to induce said person to vote for plaintiff
at the election.

The fourth paragraph charged, that, at the general elec-
tion in 1874, the plaintiff was a candidate for Congress;
that, while a candidate, and prior to the publications and
election, at Posey county, in 1874, plaintiff furnished a
glass of beer to a person to the defendants unknown, to
induce said person to vote for the plaintiff.

The fifth paragraph charged, that, at the general election
in 1874, the plaintiff was a candidate for Congress; that,

while a candidate, and prior to the publications and election, in 1874, at Posey county, the plaintiff did present a glass of beer to a person to the defendants unknown, to induce said person to vote for the plaintiff.

The sixth paragraph charged, that, at the general election, in 1874, plaintiff was a candidate for Congress; that, while a candidate, and prior to the publications and election, in 1874, at Vanderburgh county, the plaintiff furnished one hundred glasses of beer to a company of persons whose names were unknown to the defendants, to induce such persons to vote for the plaintiff.

The seventh paragraph charged, that, at the general election, in 1874, the plaintiff was a candidate for Congress; that, while a candidate, and prior to the publications and election, in 1874, at Vanderburgh county, the plaintiff, by Andrew Schmidt, furnished two glasses of beer to Joseph Lyon and — Lyon respectively, to induce them to vote for the plaintiff.

The eighth paragraph charged, that, at the general election in 1874, the plaintiff was a candidate for Congress; that, while a candidate, and prior to the publications and election, in 1874, at Posey county, Indiana, the plaintiff, by Frank Frend, offered Joseph Dieg, a qualified voter in said county, fifty dollars, to induce him to vote for the plaintiff.

The ninth paragraph charged, that, at the general election in 1874, the plaintiff was a candidate for Congress; that, while a candidate, and prior to the publications and election, in 1874, at Posey county, plaintiff did furnish to Frank Frend a large sum of money, the exact amount of which was unknown to the defendants, to be used in hiring and inducing persons to vote for the plaintiff.

The tenth paragraph charged, that, at the general election in 1874, the plaintiff was a candidate for Congress; that, while a candidate, and prior to the publications and election, in 1874, at Posey county, the plaintiff did furnish

to Henry Yunker a large sum of money, viz.: Twenty-five dollars in currency, to be used to hire and induce such persons as could be influenced by such means to vote for the plaintiff.

The eleventh paragraph charged, that, at the general election in 1874, the plaintiff was a candidate for Congress, and, while such candidate, and prior to the publications and election, in 1874, at Posey county, the plaintiff, by Henry Yunker, furnished to James E. Thomas ten dollars in currency, and to other persons to these defendants unknown, various sums of money, the exact amount of which was unknown to defendants, to be used to induce such persons as could be influenced by such means to vote for the plaintiff.

The twelfth paragraph charged, that, before the publications mentioned, in 1874, the plaintiff was a candidate for Congress; that, while a candidate, and prior to the commission of such grievances, and prior to the election, at Vanderburgh county, the plaintiff furnished T. R. McFerson with a large sum of money, to be by him used to induce persons to vote for the plaintiff for Congress.

The thirteenth paragraph charged, that plaintiff was a candidate for Congress at the general election in 1874; that, prior to the publications, and prior to the election, in 1874, at Vanderburgh county, the plaintiff, being such candidate, did permit T. R. McFerson to use his, the plaintiff's, money and means to induce persons to vote for the plaintiff for Congress at said election.

The fourteenth paragraph charged, that the plaintiff, in 1874, was a candidate for Congress, and that, prior to the general election, and prior to the publications complained of, the plaintiff furnished T. R. McFerson, at Vanderburgh county, a large sum of money, the precise amount of which defendants were unable to state, to be by him, the said McFerson, used to induce persons to vote for said plaintiff for Congress, and McFerson did so use said money, by giving to John Howe, a voter of and in the county of

Vanderburgh, one hundred dollars at one time, to induce said Howe to vote for said plaintiff for said office, and also to use his, the said Howe's, influence to induce other persons to vote for the plaintiff for Congressman; and McFerson did also give to other persons, who were unknown to the defendants, of the money so furnished him by the plaintiff, to induce such persons to vote for the plaintiff for Congress.

The fifteenth paragraph charged, that, at the general election in 1874, the plaintiff was a candidate for Congress; that, prior to the election and publications, in 1874, at Vanderburgh county, the plaintiff did permit John Howe to use one hundred and fifty dollars of the plaintiff's money to induce persons to vote for the plaintiff for Congress.

The sixteenth paragraph charged, that the plaintiff was a candidate for Congress in 1874, and that, prior to the day of election, and to the publications, at Vanderburgh county, plaintiff furnished Fred. W. Cook with a large sum of money, amount unknown, to be by him used to induce persons to vote for the plaintiff for Congress.

The seventeenth paragraph charged, that plaintiff was a candidate for Congress in 1874; that, prior to the publications and election, at Vanderburgh county, the plaintiff permitted Fred. W. Cook to use the plaintiff's money and means to induce persons to vote for plaintiff for Congress.

The eighteenth paragraph charged, that plaintiff was a candidate for Congress in 1874; that, prior to the publications and election, at the county of Vanderburgh, plaintiff permitted Fred. W. Cook to use the plaintiff's money and means to induce persons to vote for the plaintiff for Congress; that said Cook did so use the money of plaintiff, by furnishing and giving to John McLain and Harry Porter, each, large sums of money, to induce them to vote for the plaintiff; that Cook used the plaintiff's money and means, to induce other persons, unknown to defendants, to vote for plaintiff for Congress.

The nineteenth paragraph charged, that plaintiff was a candidate for Congress in 1874; that, prior to the publications and election, at Vanderburgh county, the plaintiff did permit John McLain and Harry Porter to use the plaintiff's money and means to induce persons to vote for the plaintiff for Congress.

The twentieth paragraph charged, that plaintiff was a candidate for Congress in 1874; that, prior to the publications and election, in 1874, at Vanderburgh county, plaintiff offered money to Charles C. Burns, to vote for the plaintiff, and also offered to him, said Burns, money, to induce other persons to vote for him for Congress.

The twenty-first paragraph charged, that plaintiff was a candidate for Congress in 1874; and that, prior to the publications and election, at the county of Vanderburgh, the plaintiff offered to buy Charles C. Burns to vote for the plaintiff for Congress.

The twenty-second paragraph charged, that the plaintiff was a candidate for Congress in 1874; and that, prior to the publications and election, at Vanderburgh county, the plaintiff offered to reward Charles C. Burns with money, amount not named, and the plaintiff urged Burns to name the amount, to induce Burns to vote for the plaintiff for Congress, and for him to use his influence and induce John McLain and Harry Porter to vote for the plaintiff for Congress.

The twenty-third paragraph charged, that plaintiff was a candidate for Congress in 1874; that, prior to the publications and election, at Vanderburgh county, the plaintiff permitted his son, George Heilman, to use a large amount of plaintiff's money, amount unknown, to induce unknown persons to vote for the plaintiff for Congress.

The twenty-fourth paragraph charged, that plaintiff, being a candidate for Congress in 1874, and prior to the publications and election, at Vanderburgh county, furnished William Koch with a large sum of

money, amount unknown, to be used by him to induce persons to vote for plaintiff for Congress; and plaintiff permitted said Koch to use plaintiff's money, amount unknown, to induce unknown persons to vote for the plaintiff for Congress.

The twenty-fifth paragraph charged, that plaintiff was a candidate for Congress in 1874, and, prior to the publications and election, at Vanderburgh county, plaintiff furnished Jacob Bennighof with a large sum of money, to be used by Bennighof to induce persons to vote for plaintiff for Congress, and permitted Bennighof to use, and Bennighof did use, plaintiff's money to induce persons who were unknown to vote for plaintiff for Congress.

The twenty-sixth paragraph charged, that plaintiff was a candidate for Congress in 1874; that, prior to the publications and election, at Vanderburgh county, plaintiff furnished Alexander Foster with a large sum of money, amount unknown, to be used by said Foster to induce persons to vote for plaintiff for Congress.

The twenty-seventh paragraph charged, that plaintiff was a candidate for Congress in 1874; and that, prior to the publications and election, the plaintiff furnished to persons in the First Congressional District unknown to defendants, five thousand dollars, to be used, and plaintiff permitted other persons in said district to use other large sums of money, viz.: five thousand dollars, the money of plaintiff, to be used, to induce persons to vote for plaintiff for Congress.

The twenty-eighth paragraph charged, that plaintiff was a candidate for Congress in 1874; and, prior to the publications and election, at Vanderburgh county, furnished to James Hunnel a large amount of money, amount unknown, to be by Hunnel used to induce persons to vote for plaintiff for Congress.

The thirtieth paragraph charged, that the plaintiff, being a candidate for Congress in 1874, and prior to the publications and election, in 1874, at Vanderburgh county,

furnished to Fritz Hermuth twenty dollars, to induce him to vote for the plaintiff, and also for Hermuth to use part of said money to induce other persons to vote for plaintiff for Congress.

The thirty-first paragraph charged, that plaintiff was a candidate for Congress in 1874; and, prior to the publications and election, at Vanderburgh county, the plaintiff, at the saloon of Philip Clark, did treat to twenty glasses of beer, the same being given to persons unknown, to induce persons to vote for plaintiff for Congress, and, at the same time and place, the plaintiff furnished Clark with money, the amount unknown, to be used by Clark in treating other persons, to induce them to vote for plaintiff for Congress.

The thirty-second paragraph charged, that the plaintiff was a candidate for Congress in 1874; that, before the publications and the election, at the county of Vanderburgh, the plaintiff furnished Charles Lindenschmidt with a large sum of money, the amount unknown, to induce Lindenschmidt to vote for the plaintiff for Congress, and for Lindenschmidt to use to induce persons to vote for the plaintiff for Congress.

The thirty-third paragraph charged, that plaintiff was a candidate for Congress in 1874; that, prior to the publications and election, at Vanderburgh county, the plaintiff furnished Nicholas Richert twenty dollars, to induce him to vote for plaintiff for Congress, and for him to use to induce other persons to vote for the plaintiff for Congress.

The thirty-fourth paragraph charged, that plaintiff was a candidate for Congress in 1874, and that, prior to the publications and election, in 1874, at and in said district, plaintiff did offer to furnish Joseph Dieg one hundred dollars, to induce Dieg to vote for the plaintiff for Congress, and for Dieg to use part of said money to induce other persons to vote for the plaintiff for Congress.

The thirty-fifth paragraph charged, that the plaintiff was a candidate for Congress, in 1874, and that, prior to

the publications and election, at the county of Vander-
burgh, the plaintiff furnished John Koehler forty dollars,
to induce him to vote for the plaintiff for Congress, and
to use a portion of said money to induce persons to vote
for the plaintiff for Congress.

The thirty-sixth paragraph charged, that the plaintiff
was a candidate for Congress, in 1874; that, prior to the
publications and election, to wit, in 1874, at Vanderburgh
county, Indiana, plaintiff furnished money in large
amounts, exact amounts unknown, to T. R. McFerson
and D. B. Kumler, to be used by them in inducing per-
sons and qualified voters in said district to vote for Heil-
man for "the office."

The thirty-seventh paragraph charged, that plaintiff was
a candidate for the 44th Congress; that, prior to the pub-
lications, to wit, in 1874, at Vanderburgh county, plain-
tiff permitted T. R. McFerson and D. B. Kumler to use
his money to induce voters to cast their votes for plaintiff
for "the aforesaid."

The thirty-eighth paragraph charged, that plaintiff
was a candidate for Congress in 1874; that, before publica-
tions, to wit, in 1874, plaintiff furnished to C. Steinhouse,
President of the bank of Cannelton, Indiana, in said dis-
trict, a large amount of money, to be by him used to in-
duce persons to vote for the plaintiff for Congress.

The thirty-ninth paragraph charged, that, at the gen-
eral election in 1874, plaintiff was a candidate for Con-
gress; that, on the — day of September, 1874, plaintiff
did permit one C. Steinhouse, in the county of Perry, to
use the plaintiff's money to induce persons to vote for
plaintiff for Congress.

The fortieth paragraph charged, that, in 1874, plain-
tiff was a candidate for Congress; that, before the publi-
cations, to wit, in 1874, plaintiff furnished to Henry
Reitzel, of Spencer county, fifty dollars, to be by him used
to induce persons to vote for the plaintiff for Congress,
and to induce said Reitzel to vote and use his influence

for plaintiff for said office, and that Reitzel used his influence to induce persons to vote for the plaintiff for Congress.

The forty-first paragraph charged, that plaintiff was a candidate for Congress in 1874 ; that plaintiff, on the — day of September, 1874, did give to John Gwalthney, in said district, one emerald grindstone, of the value of twenty dollars, to induce him to vote for the plaintiff.

The forty-second paragraph charged, that plaintiff was a candidate for Congress, in 1874 ; that on the — day of September, 1874, the plaintiff did furnish to one John Gwalthney, in said district, twenty dollars, to induce him to vote for plaintiff for Congress.

By the 4th section of an act, entitled "An act to protect the ballot-box, to procure a fair election, to define felonies and prescribe punishments therefor," approved March 8th, 1873, it was and is provided, as follows :

"Sec. 4. Any person hiring, buying, or offering to hire, or buy, either himself or by any one else, or furnish any money or other means to be used, or permit his money or other means to be used to hire, buy or induce any person to vote for any candidate for any office, or any person who shall attempt to induce any person to vote for any candidate by offering any reward or favor, shall be deemed guilty of a felony."

By the 8th section of the same act, it was and is provided, that "Any person found guilty of a violation of any of the provisions of this act, shall be fined in any sum not exceeding one thousand dollars ($1,000), be imprisoned in the State's prison not less than one, nor more than five years, and be disfranchised for any determinate period." 2 R. S. 1876, pp. 453 and 454.

We have set out these provisions of the criminal law of this State, for the reason that the charges made and published by the appellees against the appellant, which are set out in the different paragraphs of the appellant's complaint, and were alleged therein to be "false, mali-

cious, defamatory and libellous," were made and published by the appellees, with especial reference to the above quoted sections, and for the further reason, that, in each one of the forty paragraphs of their answer remaining in the record, the appellees have evidently grounded their defence to this action on the provisions of said sections. In the charges made and published by the appellees in their newspaper, they distinctly charged, that the appellant was guilty of the felonies which were defined in said 4th section of the above entitled act; and, in each one of the said forty paragraphs of their answer, the appellees have attempted to justify the making and publishing of said charges, by alleging the truth thereof, in the particular case stated and set forth in each particular paragraph.

In section 87 of the practice act, it is provided, that, in all actions for libel or slander, " the defendant may allege the truth of the matter charged as defamatory, and mitigating circumstances to reduce the damages, and give either or both in evidence." 2 R. S. 1876, p. 78.

In Folkard's Starkie on Slander and Libel, section 692, it is said, that " The defendant is, *prima facie*, justified in law, and exempt from all civil responsibility, if that which he publishes be true." In the same section it is further said: " When a plaintiff is really guilty of the offence imputed, he does not offer himself to the court as a blameless party seeking a remedy for a malicious mischief; his original misbehavior taints the whole transaction with which it is connected, and precludes him from recovering that compensation to which an innocent person would be entitled." In this quotation will be found the reason for the rule of law, that the truth of the charge alleged to be libellous may be pleaded as an absolute bar to an action for the recovery of damages therefor.

In Townshend on Slander and Libel, sec. 212, page 362, it is said: " The justification must always be as broad as

the charge, and of the very charge attempted to be justified." In section 213 of the same treatise, p. 369, it is further said: "A justification on the ground of truth need not go further than the charge, and it is sufficient to justify so much of the defamatory matter as is actionable, or so much as constitutes the sting of the charge; it is unnecessary to repeat and justify every word of the alleged defamatory matter; it is sufficient if the substance of the libellous charge be justified."

In the case of *Tull* v. *David*, 27 Ind. 377, it was held by this court, that "If the justification does not cover the slander to the full extent, the plaintiff will be entitled to recover for the excess not justified."

In the case at bar, it is insisted, by appellant's counsel, that all the paragraphs of the appellees' answer were bad on demurrer. We can not concur with counsel in this view of the matter. It seems to us, that each of the paragraphs of said answer stated facts sufficient, as mere matter of pleading, to bring the defence therein stated within the letter of the statute under which it was framed, and, if sustained by sufficient legal evidence, to constitute a complete bar to the appellant's action. Of course, the question of the character and quality of the evidence requisite and necessary to sustain these paragraphs of answer was not, and could not be, raised and presented by the appellant's demurrers to said paragraphs; but the only question thereby presented was, whether or not the facts stated in each paragraph were sufficient, if proved by the proper kind and quality of evidence, to show that the appellant, in the particular case therein stated, would be guilty of the felony created and defined in said 4th section of the act, before referred to, to protect the ballot-box. We think, that, in each of said paragraphs, the facts stated are sufficient on demurrer to charge the appellant with a violation of the letter of the statute.

It is claimed by the appellant's attorneys, in construing the statute in question, that the felony created and de-

fined in the 4th section of said statute "can not be committed, unless a 'voter' is hired, bought or induced to vote for a candidate. There must be a felonious intent, on the part of the person offering the bribe, to influence the vote of a legal voter." This is not in accordance with the letter of the statute, and we are not inclined to limit its meaning and purpose by any such construction of the words there used. The phrase used in the 4th section of the statute is, "to hire, buy, or induce any person to vote," etc., and not any "voter" to vote. The word "person," as there used, is not a word for construction. It includes every one, whether a voter or not, who might be either hired, bought or induced to vote, by money or other means.

The objects of the statute, as expressed in its title, were to protect the ballot-box and to procure a fair election. To secure these objects, it was certainly necessary to prohibit the hiring, buying, or inducing by money, of any and all persons to vote, as well those who were not as those who were legal voters.

The ballot-box needs protection from, and a fair election can be defeated by, the hiring, buying, or inducing by money, of persons to vote, who are not legal voters, as much so as if they were legal voters.

In our opinion, no error was committed by the court below in overruling the appellant's demurrers to each of the paragraphs of the appellees' answer.

We come now to the consideration of the several questions presented by the alleged error of the court below, in overruling the appellant's motion for a new trial of this case; and, in disposing of those questions, we will take them up in the same order in which the appellant's attorneys have presented them in their argument of the cause in this court.

The first question thus presented arises under the alleged error of the court below, in permitting the appellees to assume the burden of proof under the issues,

and in permitting them to open and close the case. It seems to us, that this question is not an open one in this State. It is settled clearly and conclusively, we think, but adversely to the position of the appellant's counsel, by the provisions of our code of practice. In considering this question, it must be borne in mind, that the appellees, in their answer, tendered no issue whatever to the appellant's complaint. They did not controvert the complaint, nor any of its allegations. In such a case, it is provided in section 74 of the practice act, that " Every material allegation of the complaint, not specifically controverted by the answer, * * * shall, for the purpose of the action, be taken as true." 2 R. S. 1876, p. 71.

In this case, therefore, the appellant's complaint, for the purpose of the action, was taken as true, in the court below. The appellant had no issue to sustain, and, of course, it can not be said, with truth or accuracy, that " the burthen of the issues " rested on him. Instead of specifically controverting the allegations of the complaint, the appellees answered affirmatively in forty different paragraphs, on each one of which paragraphs the appellant joined issue by a reply in general denial. These were the issues, and the only issues, for trial in this case.

We need hardly say, for it is self-evident, that " the burthen of these issues " rested wholly on the appellees. In section 324 of the practice act, it is expressly provided, that " The party on whom rests the burthen of the issues, may briefly state his case, and the evidence by which he expects to sustain it; " and, *Second.* " The adverse party may then briefly state his defence, and the evidence he expects to offer in support of it; " and, *Third.* " The party on whom rests the burthen of the issues may first produce his evidence; the adverse party will then produce his evidence." 2 R. S. 1876, p. 166. It seems very clear to us, that, under the issues in this case and the provisions of the practice act applicable thereto, the appellees, on whom the burthen of the issues clearly rested, had an

undoubted right to open and close the case, on the trial thereof. This conclusion is supported, we think, by a number of the decisions of this court. *Gaul* v. *Fleming*, 10 Ind. 253; *Hamlyn* v. *Nesbit*, 37 Ind. 284; and *Lynam* v. *Buckner*, *ante*, p. 402. The case of *Tull* v. *David*, 27 Ind. 377, was a suit for slander, and is directly in point on the question we are now considering. In that case, as in this, the only defence was in justification, and it was there held, that the burthen of the issue rested on the defendant; and that, in consequence, he was entitled to open and close. The burthen of the issue is the statutory, and, we think, the only proper, criterion by which it may be determined who shall have the right to open and close. On whichsoever party the burthen of the issues rests, he shall have the right to open and close. This was the view taken of this question by FRAZER, J., in the well considered case of *Judah* v. *The Trustees of Vincennes University*, 23 Ind. 272. We have been referred, by the appellant's counsel, to the later case of *Fetters* v. *The Muncie National Bank*, 34 Ind. 251. There is really no conflict between the decision of this court, in the case last cited, and the decision of the court in 23 Ind. 272, although the learned judge who wrote the opinion of the court in the later case seemed to think there was. Each of the two cases, in our opinion, was decided aright, beyond a peradventure. In the later case, which was a suit upon a written contract, the special answers of the defendants did not confess and avoid the entire contract, but, as to a material part thereof, left the burthen of the issue on the plaintiff. In such a case, it is clear, from what we have said, that the plaintiff had the right, under the statute, to open and close.

The next question presented for our consideration by appellant's counsel, arises under the fourth cause for a new trial, in his motion therefor, and relates to the alleged " error of the court, in permitting proof of the existence of a rumor in mitigation of damages." It is conceded

by appellant's attorneys, in argument, that "general rumors, under proper pleadings, may be given in evidence in mitigation of damages, as decided in *Blickenstaff* v. *Perrin*, 27 Ind. 527." But they contend, "that matter in mitigation can not be given in evidence, under a plea in justification." It seems to us, that this point is settled adversely to the appellant, by a fair construction of the language used in section 87 of the practice act, in which it is provided, as follows:

"Sec. 87. In all actions mentioned in the last section," (namely, actions for libel or slander,) "the defendant may allege the truth of the matter charged as defamatory, and mitigating circumstances to reduce the damages, and give either or both in evidence."

It is clear, we think, that, under this provision of the code, where either matter in justification or matter in mitigation is pleaded, either or both may be given in evidence. This conclusion is in strict harmony with the decision of this court in the case of *Swinney* v. *Nave*, 22 Ind. 178, in which it was said by PERKINS, J., in delivering the opinion of the court, that "It is not necessary, though permitted by the code, to answer in mitigation in actions of slander. Matter in mitigation may be given under an answer in justification." In the case of *O'Conner* v. *O'Conner*, 27 Ind. 69, it was again held to be unnecessary to answer in mitigation in actions of slander, and, further, that evidence in mitigation might be given to the jury under the general denial. In the case of *Briggs* v. *Sneghan*, 45 Ind. 14, it was held by this court, that even upon the default of the defendant, and certainly, if the defendant appears and only answers affirmatively, he is in no worse condition than he would have been if he had merely made default, "he may cross-examine the witnesses called by the plaintiff; that he may call other witnesses and prove any matter which properly goes to extenuate or mitigate the damages;" and that "he may show that the plaintiff has no legal claim to any but nominal damages."

We hold, therefore, that the court below did not err in allowing the appellees to give in evidence matter in mitigation, under pleas in justification.

The fifth cause for a new trial assigned by the appellant was very similar to the fourth cause, just considered. In the fifth cause it was charged, that " the court erred in permitting John C. Stacer, a witness for the defendants, to testify that there was a general rumor during the year 1872, and up to the 20th day of September, 1874, that the said plaintiff was using large sums of money to secure his election, in treating, and for other purposes, to which the plaintiff at the time excepted."

It appears from the bill of exceptions containing the evidence on the trial, that the witness, Stacer, was asked by the appellees " whether, previous to the 20th day of September, 1874, you had any knowledge of a general rumor in regard to the manner in which Mr. Heilman conducted the canvass." The appellant objected to this question, and any answer which the witness might give thereto, " for the reason that general rumor can not be given in evidence, in an action for libel, under a plea of justification," which objection the court overruled and permitted the witness to answer the question, to which decision the appellant excepted. The answer of the witness was as follows: " Yes sir; there was a general rumor." The appellees then asked the witness this further question: " Now, state what that general rumor or report was in regard to his manner of conducting his canvass for Congress." To which question the appellant objected, " for the reason that evidence of general rumor, in an action for libel, is not admissible under a plea in justification," which objection the court overruled, and permitted the witness to answer the question, to which decision of the court the appellant at the time excepted. The witness answered the question as follows: " The general rumor was, that he was spending money to carry his election. There was a rumor both times he was a candidate, in 1872

and 1874." On cross-examination the witness testified as follows: "I don't know who circulated it. I associated more with his political enemies than with his friends. I am a Democrat. I don't know that I heard it from any but his political enemies."

The main question arising under this cause for a new trial is precisely the same as that which arose under the fourth cause for a new trial, assigned by the appellant, and that is, whether or not matter in mitigation might be given in evidence, under pleas in justification. We have fully considered this question in what we have said in relation to the fourth cause for a new trial, assigned by the appellant; and, for the reasons there given, we hold, as we there held, that no error was committed by the court below, in the admission in evidence of matter in mitigation, under pleas in justification. We have, however, set out the evidence of Mr. John C. Stacer in full, for the purpose of showing that he did not say that the appellant, according to the general rumor of which the witness testified, "was using large sums of money, to secure his election, in treating, and for other purposes." In his testimony, the witness made no such statement; and therefore, when it was assigned, as cause for a new trial, that the court had erred in permitting the said witness so to testify, the court was justified in overruling the motion for a new trial for that cause, upon the ground that no such evidence had been admitted. The argument of appellant's counsel, in commenting on Mr. Stacer's testimony, loses its point when the evidence is read. Counsel say: " There is no statute against treating, in Indiana. However reprehensible the practice may be, it is not necessarily felonious." We concur with counsel in this view of the matter, but in so far as the testimony of Mr. Stacer is concerned, it was not even rumored that the appellant had ever used any sum of money, in " treating," to secure his election.

It was assigned as the sixth cause for a new trial, in

the appellant's motion therefor, "that the court erred, in permitting the said defendants to ask George W. Shanklin the following question: 'What was your motive in *writing* the articles set out in the complaint?' to which the said plaintiff at the time excepted." It appears from the bill of exceptions, that the question actually propounded to the witness, George W. Shanklin, was this: "Now, Mr. Shanklin, tell the jury your motives for *publishing* these articles."

It will be seen that this is a very different question from the one set out in the sixth cause for a new trial. It is one thing to write an article, and another and very different thing to publish an article when written; and the motives which induce the writing or publishing might well differ as widely from each other as do the things themselves. Therefore, the court below might well have overruled the appellant's motion for a new trial, in so far as this sixth cause therefor was concerned, upon the express ground that the alleged error of law, therein stated, was never committed, and had, in fact, no existence. The appellant objected to the question asked, to the proof of motives, under the issues, because "irrelevant and incompetent;" but the court overruled the objection, and the appellant excepted. These grounds of objection again raise the question, and none other, whether or not matter in mitigation may be given in evidence under pleas in justification. This question has already been decided, in this case, adversely to the appellant's position, and our views thereon need not be repeated. For the purpose of negativing malice in the appellees, in making the publications complained of, and thereby mitigating the damages, it is clear, we think, that the motives of the appellees, in the premises, were both relevant and competent; and therefore we hold, that no error was committed by the court below, in the admission of the evidence objected to, in regard to the appellees' motives.

The seventh, eighth, ninth, tenth and eleventh causes for a new trial, assigned by the appellant in his motion therefor, are all of the same character; and therefore the questions thereby presented may be properly considered together. Each of these causes relates to the admission of the testimony of a certain named witness, or witnesses, each of whom testified that he had received money from certain named parties, to be used in electioneering for the appellant. The evidence of each of these witnesses was objected to by the appellant, upon the ground that it was not shown that he had any connection whatever with the party or parties from whom the witness obtained the money; but in each case, on the statement of the appellees, that they would, by further testimony, connect the appellant with the particular transaction, or that, failing in this, the court might exclude from the jury the testimony of the witness, the court overruled the appellant's objection and admitted the testimony of the witness.

It will be seen, therefore, that the question presented by each one of these causes for a new trial relates entirely to the order in which the evidence should be introduced on the trial. Of course, it was indispensably necessary that the appellant's connection with the parties from whom the witnesses testified that they obtained the money should be shown and established by other evidence; as otherwise the testimony of the witnesses in question would be utterly immaterial and irrelevant.

As a general rule, a party may introduce his evidence in the order he prefers; and this rule is subject only to the discretion of the court trying the cause. Where the court, in its discretion, allows a party to introduce his evidence in the order he prefers, or where the court requires the proof of a previous fact to be first made, in our opinion, the ruling or decision of the court would not, in either case, be an available error in favor of the party complaining thereof, for which the judgment ought to be

reversed. *Nordyke* v. *Shearon*, 12 Ind. 346; *Goings* v. *Chapman*, 18 Ind. 194; and *Ginn* v. *Collins*, 43 Ind. 271.

If the appellees had failed, by proper and sufficient testimony, to connect the appellant with the parties from whom these witnesses testified that they had received such money for such purpose, in such manner as to make it apparent that the said parties were acting in the premises for, and on behalf of, the appellant, we can not doubt that the court below would, on the appellant's motion, have promptly excluded from the jury the testimony of said witnesses. As no such motion was made, we may reasonably conclude that the appellant was satisfied at the close of the trial, that the testimony of these witnesses was properly in the record.

We can not say, upon these causes for a new trial, or any of them, that the court below erred in refusing the appellant a new trial of this cause.

In their argument of this cause, in this court, the appellant's counsel have not even alluded to the twelfth, thirteenth, fourteenth and fifteenth causes for a new trial. Under the well settled rule of this court, we regard the appellant's failure to discuss these causes for a new trial, which are alleged errors of law and misconduct of a juror, as tantamount to an express waiver of the questions thereby presented. *Breckenridge* v. *McAfee*, 54 Ind. 141; *Graeter* v. *Williams*, 55 Ind. 461; and *Roche* v. *The Roanoke Classical Seminary*, 56 Ind. 198.

The only other causes for a new trial, remaining to be considered, are the first and second; and these causes present the question, whether or not the verdict of the jury is sustained by the evidence, and is in accordance with law. It is unnecessary for us, in our opinion, to set out the evidence, or to comment thereon at any length. We have carefully read and considered the evidence, and it seems to us that it sustains the verdict of the jury. The learned judge who presided at the trial of this cause instructed the jury so fully, clearly and fairly as to the

law of this case, that the appellant has not complained, in this court, of any part of said instructions.

We think that the verdict of the jury was not contrary to, but in accordance with, the law of the case.

In conclusion, we hold, for the reasons given, that no error was committed by the court below, in overruling the appellant's motion for a new trial of this cause.

The judgment is affirmed, at the appellant's costs.