### AARON L. ZOOK, ET AL., v. JOHN SIMONSON.

Action by assignee against the maker of a promissory note. Answer, that the assignee had notice of fraud in the procuring of the note by the original payee.

1. *Actual Notice of Fraud to Purchaser, before Maturity, of a Promissory Note.*— While it is the general rule that the indorsee of a note payable in a bank in this State, before maturity, in good faith, and without notice, will take the note, free from all equities and defenses existing between the maker and payee; yet where such indorsee has actual notice of such defenses he takes subject to them.

2. *Evidence of an Indorsement as to Consideration.*—*Prima facie* an indorsement is, as a general rule, evidence of a valuable consideration. But when a note has been procured by fraud, the general presumption of value paid is rebutted; and the assignee must prove that he paid value.

3. *Order of Presenting Evidence—Discretion of Court.*—In general, a party may present his proof, in any order, subject, however, to the discretion of the trial court. And the ruling of a court thereon, is not a basis for the reversal of a cause.

Filed February 24, 1881.

Appeal from Knox.

Opinion of the court by Mr. Justice Howk.

This was a suit by the appellants against the appellee, upon a promissory note, of which the following is a copy:

" $112.                           VIGO, INDIANA, June 9, 1875.

" One year after date, I promised to pay to Walker & Cornell, or order, one hundred and twelve dollars, negotiable and payable at the Vincennes National Bank, in Vincennes, Ind., for value received, without any relief whatever from valuation or appraisement laws, with interest at the rate of ten per cent. per annum, until paid. The drawers and indorsers severally waive presentment for payment, protest and notice of protest, and non-payment of note. [Signed.]     " JOHN SIMONSON."

In their complaint the appellants alleged that the note was indorsed to them by the payees thereof, and that the note and interest remained due and wholly unpaid.

The appellee answered in three special or affirmative paragraphs, to each of which the appellants' demurrer, for the want of sufficient facts, was overruled by the court, and to these rulings they excepted. They then replied to appellee's answer, by a general denial thereof. The issues joined were tried by a jury, and a verdict was returned for the appellee, and the appellants' motion for a new trial having been overruled, and their exception saved to this ruling, the court rendered judgment on the verdict.

In this court, the appellants have properly assigned, as errors, the decisions of the Circuit Court in overruling their demurrers to each of the paragraphs of appellee's answer, and their motion for a new trial.

In his argument of this cause, in this court, the appellants' counsel has complained chiefly of the decision of the court in overruling the demurrer to the second paragraph of appellee's answer; and as this paragraph contains a fuller statement than either of the other paragraphs of answer, of the facts upon which

the appellee relied as a defense to this action, we will give a summary of its allegations of fact in this connection.   The appellee alleged in substance, in the second paragraph of his answer, that the payee of the note in suit procured the appellee to execute said note to them, by fraud and covin, in this, to-wit :  The said payees, at the time the note was executed, falsely and fraudulently represented to the appellee, that they, the said payees, were learned, experienced, and skilled fruit-growers, and skilled in the art and business of engrafting fruit trees; and that, in consideration of the execution of the note in suit, they would engraft two thousand grafts of thrifty growth, and capable of bearing good and abundant fruit, into appellee's apple trees, on his farm in Knox county, Indiana; that appellee was wholly ignorant of the art and business of fruit-growing and the grafting of trees, and relying upon the representations of said payees and their promises so made to him, he did execute the said note to them, in pursuance of their said representations and agreement; that thereupon, the said payees engrafted five hundred worthless sprouts and twigs of apple trees only into his said orchard, in such an unskillful and unworkmanlike manner that the same would not and did not grow; but, on the contrary, greatly injured and damaged the appellee's orchard, and they were the only grafts put in by said payees; that at the time the note in suit was executed, and at the time said trees were so engrafted, the said payees, instead of being skilled and experts in the art of engrafting apple trees, were wholly ignorant and unskilled in such business; and that the appellants, at the time they procured the note in suit to be assigned to them, and at the time it was assigned to them, had full knowledge of all the facts stated in said second paragraph of answer; wherefore, etc.

Of this second paragraph of answer the appellants' counsel says:  " It is clear from the repeated decisions of this court, that the second paragraph is bad, unless the closing part of it, which alleges that the plaintiff had knowledge of the matters precedently stated in said paragraph, at the time of the assignment of the note, makes it good."   Doubtless, this may be regarded as a correct statement of the effect of the decisions of this court, in relation to notes payable at a bank in this State,

and negotiable as inland bills of exchange, in suits between the indorsers of such notes and the makers thereof. In such cases, the general rule in this State is, that the indorsee of such a note before its maturity, in good faith and without notice, will take and hold the note freed from all equities and defenses existing between the maker and payee thereof. *Murphy* v. *Lucas*, 58 Ind. 360; *Bremmerman* v. *Jennings*, 61 Ind. 334; *Maxwell* v. *Merchant*, 66 Ind. 301, and *McCoy* v. *Lockwood*, decided at this term.

In the case at bar, however, it was alleged in the paragraph of answer now under consideration, after having stated matters which would have constituted a complete defense to any action on the note by the payees thereof, that the appellants had full knowledge of all such matters, at the time they procured the note to be assigned to them, and at the time it was so assigned to them. Under these allegations of facts, which must be taken as true against the appellants, as the question is now presented, we are of the opinion that they took and held the note sued upon, subject to all equities and defenses existing between the makers and the payees thereof, and that the facts alleged in the second paragraph of answer, therefore, were amply sufficient to withstand the demurrer thereto.

The important and controlling questions in this cause, as it seems to us, are properly presented for our decision by and under the alleged error of the court in overruling the appellants' motion for a new trial.

On the trial of the cause, the record shows that the appellants objected at the proper time to the introduction by the appellee of any evidence which tended to prove the facts alleged in the second paragraph of answer impeaching the consideration of the note in suit upon the ground that it had been fraudulently obtained from the appellee by the payees thereof, until the appellee had first shown, as he had alleged in said paragraph of his answer, that the defendants had full knowledge of these facts at the time they procured the note to be assigned to them and at the time it was so assigned to them. But the court overruled the appellants' objection, and, over their exceptions, permitted the appellee to first introduce his evidence in relation to the consideration of the note sued upon, and the alleged fraudulent

manner in which the note had been obtained from him by the
payees. The decisions of the court, in overruling these objec-
tions were assigned by the appellants as cause for a new trial in
their motion therefor, and they are complained of as erroneous,
by their counsel, in his argument of this cause in this conrt.

It seems to us that the appellants' objections can only be re-
garded as objections to the order in which the appellee proposed
to introduce his evidence. As a general rule, a party may in-
troduce his evidence in the order he may prefer, subject only to
the discretion of the trial court. Where the court, in its dis-
cretion, has allowed a party to introduce his evidence in the or-
der in which he has offered it, or where the court has required
the evidence in regard to some other alleged fact to be first in-
troduced; the ruling of the court, in either case, would not, we
think, be an available error in favor of the party complaining
thereof for the reversal of the judgment below. *Ginn* v. *Collins*,
43 Ind. 271; *Heilman* v. *Shanklin*, 60 Ind. 424; and *Burns* v. *Har
ris*, 66 Ind. 536.

The record before us shows that, on the trial, the appellee
introduced the evidence of several witnesses in regard to the
consideration of the note in suit, and the alleged fraudulent
manner in which the note had been obtained from him by the
payees thereof; and that he then rested, without having intro-
duced any evidence tending to prove that the appellants had
full knowledge of the consideration of the note, and of the al-
leged fraudulent manner in which it had been obtained from ap-
pellee by the payees thereof at the time they procured the note
to be assigned to them and at the time it was so assigned to
them, or that they had accepted the assignment of said note af-
ter its maturity, as the appellee had alleged in the third para-
graph of his answer. Thereupon the appellee gave in evidence
the note in suit, with the indorsement, in blank, of the payees
thereon, without date, and rested; and this was all the evidence
given in the cause.

The court, then, of its own motion gave the jury the follow-
ing instructions:

1 " The plaintiff sues on a note alleged to have been exe-
cuted by defendant to Walker and Connell, payable at the Vin-

cennes National Bank, Vincennes, Indiana, and indorsed to plaintiffs. The defendant, by his answer, admits the execution and indorsement of the note. This admission makes out the plaintiffs' side of the case, and entitles them to a verdict for the full amount of note and interest, unless the defendant has satisfied you, by a preponderance of the evidence, that the material allegations of the amended second paragraph of his answer, so far as the burden of proof rests upon him, are true."

2 "The defendant, in said paragraph of answer, alleges in substance that Walker and Connell made an agreement with defendant, by which they undertook to graft defendant's apple-trees with grafts that would grow and bear a good quality of fruit, and do the work in a skillful manner; that the grafting was done in an unskillful manner, to the injury of the trees and with worthless grafts; that the note was given in consideration of said undertaking; and plaintiffs had notice of these facts when they took the assignment of the note."

3 "It is not incumbent on the defendant to prove that the plaintiffs had knowledge, when the note was indorsed to them, of the other matters alleged in the said paragraph. Upon proof of these matters, the burden of proof would rest on plaintiffs to show that they took the note in ignorance of the existence of those matters. The plaintiffs having offered no evidence on that point, it will be the duty of the jury to consider only whether there has been shown a failure of consideration, as alleged in said paragraph of the answer. If there has, then your verdict should be for defendant; if not, for plaintiff for amount of note and interest." [Signed.] "N. F. MALOTT, Judge.

These instructions were duly excepted to by the appellants, at the time they were given. They were applicable to the case made by the evidence, and we think they contain a true and correct statement of the law governing this case. In *Vathir* v. *Zane*, 6 Gratt. 246, the court said: "As a general rule, the indorsement of a negotiable note is of itself *prima facie* evidence that the indorsee has paid value for it. But when the payee has procured the note by fraud this general presumption is rebutted, and the holder can not recover without proving that he has paid value." In *Rogers* v. *Morton*, 12 Wend., 484, a note had been

given for a supposed balance on a settlement of accounts, which balance was shown to have been made up, in part, by a charge for a draft of which the creditor had never been the holder. Nelson J., said: "I am of the opinion that the facts disclosed by the bill of exceptions were sufficient to throw the burden upon the plaintiff of showing that Gwathmey was a *bona fide* holder for value. A promissory note imports a valuable consideration upon its face, and possession is presumptive evidence of property rightfully acquired; but when the maker shows that it was obtained from him and put into circulation by force or fraud, all the above intendments of law are rebutted, and proof becomes necessary." In *Bailey* v. *Bidwell*, 13 M. and W., 73 Parke, B., said: "It certainly has been the universal understanding since the later cases, that if the note were proved to have been obtained by fraud, or affected by illegality, that offered a presumption that the person who had been guilty of the illegality would dispose of it and would place it in the hands of some other person to sue upon it; and that such proof casts upon the holder the burden of showing that he was a *bona fide* holder for value."

This doctrine was recognized, approved, and acted upon by this court, in the case of *Harbison* v. *The Bank of the State of Indiana* 28 Ind., 133. In that case, the bank of the State, as the indorsee, had sued Harbison, as the drawer of a bill of exchange, and had obtained a judgment. On the trial of the cause, the appellant had asked the court to give the jury the following instruction: "If the jury believe, from the evidence in this case, that W. G. Laughery, the acceptor of the bill of exchange in the complaint mentioned, obtained the signature of the defendant, James P. Harbison, thereto, as drawer thereof, fraudulently, and without any consideration, then the plaintiff can not recover in this action without showing that it is the *bona fide* holder of said bill of exchange, and that the bank paid a valuable consideration therefor, and the mere production of the bill of exchange in court, and reading the same to the jury, and the possession thereof by the plaintiff, is not sufficient evidence that the bank paid a valuable consideration for the same; and without such evidence the plaintiff ought not to recover in this suit,

and the jury should find for the defendant." This instruction had been refused below, and on appeal, in reference to the instruction, this court said: "The evidence introduced under the issues made, required that this instruction should have been given to the jury, if it correctly stated the law; and we do not think its correctness can be seriously questioned. * * * The instruction should have been given."

So far as we are advised, the doctrine of the case cited has never been doubted or questioned by this court. The opinion of the court is strongly supported by the numerous authorities cited therein, to which we refer without re-citing them. The case cited, we think, is directly in point, and is decisive of the case at bar. The appellee substantially alleged, in this case, that the note in suit had been obtained from him by fraud, and without consideration; and his evidence fairly sustained this allegation; and upon this state of the case, we are of the opinion that the appellants could not recover, in the absence of any evidence tending to show that they were *bona fide* holders of the note, for a valuable consideration.

The court did not err, we think, in overruling the motion for a new trial.

The judgment is affirmed at the appellants' costs.