No. 10,705.

## THE STATE v. DE LONG ET AL.

CRIMINAL LAW.—*Libel.*—*Information.*—An information which avers the malicious publication in a newspaper of language as follows: "The rascally conduct of P. B., mayor of the city of H., and his pimps, in arresting and fining men on the most frivolous pretexts, would not be tolerated in any other town in Northern Indiana. There will be some lynch law put in force some of these days;" and that the publication is false, shows a criminal libel under the statute, R. S. 1881, section 1925.

SAME.—*Practice.*—An information may, under the statute, be filed in the clerk's office at the same time as the affidavit on which it is founded.

From the Huntington Circuit Court.

*F. T. Hord*, Attorney General, and *C. W. Watkins*, Prosecuting Attorney, for the State.

*J. B. Kenner* and *J. I. Dille*, for appellees.

NIBLACK, J.—This was a prosecution upon affidavit and information for libel. R. S. 1881, section 1925. The affidavit charged "That Alexander W. De Long and Charles H. Filson, late," etc., "on the 26th day of July, A. D. 1882, at,"

etc., "being then and there editors and publishers of a certain weekly newspaper called the Indiana Herald, and, as such editors and publishers aforesaid, did then and there, on said day, unlawfully, maliciously and libellously print and publish the following false, defamatory and libellous words, that is to say : ' The rascally conduct of Pat Boyle' (thereby meaning and intending Lawrence P. Boyle), 'mayor of the city of Huntington, and his pimps, in arresting and fining men on the most frivolous pretexts, would not be tolerated in any other town in Northern Indiana. There will be some lynch law put in force some of these days.' Meaning thereby that the said Lawrence P. Boyle, mayor of the city of Huntington, in the discharge of his official duty, was an unjust officer, and that he, the said Lawrence P. Boyle, by illegal and unjust conduct, was imposing fines and punishments (on persons) tried before him as such mayor where the law did not in any way authorize the same ; and of imposing fines and penalties on persons under color of his office, when there was no law of the State of Indiana, or ordinance of the city of Huntington, authorizing the infliction of such punishments ; and * * * * that all of such publication was false," etc.

The affidavit was signed by Boyle and sworn to by him before the clerk of the Huntington Circuit Court. After a motion to quash both the affidavit and information had been overruled, the defendants pleaded in abatement, that no affidavit was first filed with the clerk of the Huntington Circuit Court by a competent and reputable person charging an offence, with the names of the witnesses endorsed thereon, but that the only affidavit made in the cause was one attached to, and on the same paper with, the information with file-marks, words and figures marked " Ex. A ;" that said affidavit was executed and deposited with the prosecuting attorney, who did not first file, but held the same until he prepared an information thereon, which was written upon the same paper, and then filed it with the information ; that afterwards, by leave of court, the affidavit and information were both amended,

but· not in such a way as to cure the objection herein urged to the affidavit; that the amended affidavit and information were not then filed as the law directs, and that, consequently, no sufficient affidavit or information was filed in this case.

The prosecuting attorney demurred· to this plea in ábatement, for want of sufficient facts, but the court overruled the ·demurrer, and, the State declining to reply further, final judgment was rendered for the defendants, and they were dis·charged.

Error is assigned by the State upon the decision of the ·court overruling the demurrer to the plea in abatement, and ·cross error is assigned by the defendants upon the refusal of the court to quash the affidavit and the information. The ·cross error raises the first question to be considered in its natural order.

In support of the cross error 'it is argued that the publication ·set out in the affidavit did not transcend the limits of criti·cism permissible in commenting upon the acts of public officers, and that it was, hence, not libellous *per se;* that the meaning sought to be given to the publication by the *innuendo* was a forced and unnatural meaning, which added nothing to ·the plain import of the language used on the occasion as a ·criticism merely.

Odgers on Libel and Slander, at page 35, says : " The right to comment upon the public acts of public men is the right of every citizen, and is not the peculiar privilege of the press. But newspaper writers, though in strict law they stand in no better position than any other person, are generally allowed .greater latitude by juries. For it is in some measure the duty ·of the press to watch narrowly the conduct of all government ·officials, and the working of all public institutions, to comment freely on all matters of general concern to the Nation, :and to fearlessly expose abuses."

That author, in the same connection, further says, that however severe in their terms such comments may be, they :must be made without malice, and wicked and corrupt motives

must never be wantonly assigned; that true criticism ends where defamation commences.

Townshend on Slander and Libel, at section 254, summarizes as follows: "No criticism of a person holding a public office is libellous unless malicious. No one can doubt the importance in a free government of the right to canvass the acts of public men and the tendency of public measures—to censure boldly the conduct of rulers, and to scrutinize the policy and plans of government. This is the great security of a free government. An editor may comment freely on the acts of government, officers or individuals, and indulge in occasional mirth and wit, and it is only when the character of the publication is malicious, and its tendency to degrade and excite to revenge, that it is condemned by the law, and subjects the publisher to prosecution."

The publication complained of in this case must have been understood as imputing official dishonesty, if not corruption, to the officer named. Its tendency evidently was to degrade that officer and to excite to revenge. The affidavit charged that it was made maliciously. These constitute all the substantial elements of a libel in a case like this, according to the definitions given as above.

In its charging part the information substantially followed the affidavit, concluding with the allegation, "As L. P. Boyle has complained on oath." In our opinion, therefore, the motion to quash was correctly overruled as to both the affidavit and the information. Starkie Slander and Libel, marginal p. 242, sections 269–270; *Tappan* v. *Wilson*, 7 Ohio, 190; *Gabe McGinnis*, 68 Ind. 538; *Gott* v. *Pulsifer*, 122 Mass. 235 (23 Am. R. 322); *Harle* v. *Catherall*, 14 Law Times (N. S.) 801; *Bain* v. *Myrick*, ante, p. 137.

The code of criminal procedure declares that "An information is the official statement made to the court by the prosecuting attorney, that a person has been guilty of some designated felony or misdemeanor. It must be filed and signed by the prosecuting attorney, and based upon the affidavit of

some competent and reputable person." R. S. 1881, section 1678.

That code further provides that "All public offences, except treason and murder, may be prosecuted in the circuit and criminal courts by information based upon affidavit in the following cases," enumerating . four different contingencies in which offences may be so prosecuted, and concluding with the additional provision that " Whenever, either in term or vacation, any competent and reputable person has knowledge of the commission of any misdemeanor , not within the exclusive jurisdiction of a justice of the peace, he may make an affidavit before any person authorized to administer oaths, setting forth the offence and the person charged in plain and concise language, together with the names of the witnesses, and file the same with the clerk, who shall thereupon notify the prosecuting attorney thereof. • The prosecuting attorney shall at once prepare and file an information, in term or vacation, in every case against the person charged in said affidavit." R. S. 1881, section 1679.

We regard so much of the statute lastly above quoted as requires the affidavit to be filed with the clerk by the person making it, as directory merely, and, consequently, as constituting a provision which need not be literally complied with. State v. Bunnell, 81 Ind. 315.

The essential requisite, as regards the affidavit in prosecutions by information, is that an affidavit charging an offence must be first made so that an information may be based upon it. When taken in connection with other provisions of the statute, and the long established practice and usages of this State touching prosecutions upon information, we think the latter clause of section 1679, quoted above, was not intended to exclude every other method of commencing prosecutions by affidavit and information, the object being rather •to enable competent and reputable persons to cause prosecutions to be instituted against those guilty of certain offences without the assistance, and, if need be, even against the wishes, of the

prosecuting attorney, leaving it to that officer to procure affidavits upon which to base informations in other cases, and in such other ways as have been usual in practice in this State in prosecutions upon information. R. S. 1881, section 1900.

Section 1761 of the present criminal code, in effect, requires the prosecuting attorney in certain cases to procure some suitable person, when the same can be done, to make an affidavit to serve as the basis of an information. An affidavit to serve a similar purpose may, in some instances, be also made under the direction of the proper court, in aid of its criminal jurisdiction. R. S. 1881, section 1760.

Both the affidavit and information may be amended after they are filed, the former before the person accused pleads, and the latter at any time before or on the trial, when necessary to conform to the affidavit. R. S. 1881, sec. 1735.

The conclusion we have reached is that in cases like this, where it appears that the information was based on what purports to be a proper affidavit, and that the affidavit was filed with, or at the same time as, the information, an objection that the affidavit was not filed in time can not be sustained.

This conclusion requires us to hold that the demurrer to the plea in abatement ought to have been sustained. *Ward* v. *State*, 48 Ind. 289; *Sater* v. *State*, 56 Ind. 378; *Short* v. *State*, 63 Ind. 376.

The judgment is reversed, with costs, and the cause remanded for further proceedings.