## H. B. LATHAM V. THE FIRST NATIONAL BANK.

CHATTEL MORTGAGE, *by Agent—Ratification—Possession by Mortgagee.* Where an agent gave a chattel mortgage in his own name upon his principal's cattle without his knowledge, and the mortgagee believed they were the property of the agent, and the agent with the money obtained upon the mortgage purchased cattle which he put into the herd of his principal, and more than two years thereafter turned over to the principal all the cattle, including those purchased with the money obtained from the mortgagee, and the owner of such cattle had not disclosed his ownership of them, though he knew of such mortgage shortly after its execution, *held,* that the mortgagee had the right of possession of the cattle mortgaged.

*Error from Sedgwick District Court.*

REPLEVIN, by *The Bank* against *Latham,* to recover the possession of certain cattle on which plaintiff had certain chattel mortgages. Trial by the court, at the June term, 1885; findings of fact and conclusions of law in favor of the plaintiff; new trial denied, and judgment that the plaintiff recover of defendant the possession of said last-named cattle, described in "Exhibit A" attached to plaintiff's petition, or the value thereof, to the amount of $2,360, and 12 per cent. interest from this date in case a delivery thereof cannot be had; and costs of suit; and that a writ of restitution issue therefor. To this judgment the defendant excepted, and has brought the case to this court. The material facts appear in the opinion.

*Hatton & Ruggles,* for plaintiff in error.

*Whiteside & Gleason,* for defendant in error.

Opinion by HOLT, C.: In 1874, Wm. B. Broadwell, living at Hutchinson, Kansas, took the charge of a herd of cattle which he bought with money furnished him by H. B. Latham, plaintiff in error. Broadwell was to take care of them, keep up the herd, and after a term of years was to have one-half of the increase. In June, 1882, all the cattle accumulated in this business were sold, and Latham's share of the proceeds coming to him were, at his request, reinvested by Broadwell in purchasing a herd of half-breed cattle. During the months of July and August Broadwell purchased two hundred and three cows and calves, and fifty-three dry cows. Upon the 31st day of August, Broadwell gave a mortgage in favor of the Reno County Bank, to which the First National Bank of Hutchinson is successor, for the sum of $2,000, upon the cattle hereinafter described. With this $2,000, less the discount, he purchased in Barber county sixty-nine head of cows and calves, and gave his mortgage upon them, and also upon other cattle of Latham, making the aggregate number about one hundred and fifty. All the cattle bought by Broadwell were branded by his own mark, "K L", on both sides, and it was generally supposed by those with whom he had business dealings that the money he was using to buy these cattle was his own. In November following, the following contract was entered into between Wm. B. Broadwell and R. B. Latham:

"HUTCHINSON, KANSAS, November 24, 1882.

"Having bought in July and August last, for R. B. Latham, 203 cows and calves and 53 dry cows at a cost of $7,590, (Latham's money,) I agree to keep said cattle for said Latham for the term of two to five years from June, 1882, (at the option of said Latham,) at my own expense, together with the increase, (except that the steers raised may be sold at two or three years of age, and the money divided equally between the said Latham and myself.) At the termination of this agreement I agree to return to said Latham the said cattle or their cost in money, and one-half their increase. I to keep and make good said cattle for one-half of their increase (offspring). At the expiration of said agreement said cattle may be sold and the amount divided, after deducting original cost;

or if this agreement is terminated before five years, if both parties can agree on the price, said Latham may take the herd, paying me my part of the increase. Said cattle are now on the Salt Fork, Eagle Chief range, Indian territory; branded 'K L'. WM. B. BROADWELL.

"I agree to above.— R. B. LATHAM."

At this time Broadwell told Latham that he had given a mortgage for $2,000 upon these cattle, due in six months. Latham said: "You ought not to have done that; you could be indicted for this act." Broadwell requested him to say nothing about it, and told him he would put a mortgage upon his house for the amount, but it was never done. Upon the 1st day of September, 1883, the note still being unpaid, a new one was given in its stead, and another mortgage was given upon a portion of the stock, to wit, two hundred and fifty cows and one hundred and eighty yearlings, purporting to secure the amount of $2,000. It was agreed between the bank and Broadwell that the first mortgage should remain in force. On the 10th day of March, 1884, the said indebtedness not having been paid, Broadwell executed and delivered to said bank a third mortgage upon a portion of said cattle, to wit, one hundred and thirty cows, one hundred and sixty steers and heifers, purporting to secure the payment of $2,130; this was filed in the office of the register of deeds, and affidavits were made renewing the other two mortgages. During all this time the bank believed, and had no intimation otherwise, that the cattle mortgaged were the property of Broadwell. He was unable to pay the interest upon the mortgages, obtained money from Latham for that purpose, and paid the interest at one time with the money. In July, 1884, Broadwell turned over to Latham all the cattle of the herd at that time, about two hundred and seventy-five. This action was brought by the bank as plaintiff, in 1885, to recover the cattle named in the mortgages. Upon the trial the court held that there was no lien upon the cattle under the second and third mortgages, but held that the plaintiff had a lien for the amount of $2,360 for the cattle mentioned in the first mortgage. Of that judg-

ment the defendant complains, and seeks a reversal in this court.

Under the findings we shall consider only the first mortgage, and the cattle embraced therein.    The plaintiff in error contends that the cattle never belonged to Broadwell, and therefore that he had no authority to give a mortgage thereon to plaintiff; but the evidence establishes that the mortgage was given, not alone upon the cattle that were purchased by the money of Latham, but was also given upon the sixty-nine head of cattle that were purchased by the money advanced by the bank, and they were turned into and became a part of the herd of Latham that was turned over to him by Broadwell in 1884.    He received what benefit there may have been from the purchase of the sixty-nine head of cattle, and it seems to be too late now to question the validity of the mortgage when he had received all the benefits arising therefrom.

It is also contended by plaintiff in error that there was a ratification of this transaction between Broadwell and the bank by Latham, for the reason that he took possession of the cattle so purchased, and also that he furnished the money to pay one installment of the interest upon the note which this mortgage was given to secure.    The testimony does not show whether he knew the mortgage was given to plaintiff, although it does appear that he knew the cattle were mortgaged to some one at the time the money was furnished to pay the interest; but certainly there were facts enough to have led to the discovery of the mortgage, and we are inclined to believe he had constructive knowledge of the fact, at least, by the filing of the mortgages in the office of the register of deeds of Reno county.    We believe that the paying of the interest and keeping the proceeds thereof was certainly a ratification of the act of Broadwell, and for that reason he ought not to be heard now to say that the bank had no lien upon the cattle which he held.

There is another reason that is important, and which has great weight with us in deciding this case, and it is this: that he first discovered the mortgage was upon the cattle in No-

vember, 1882, and although he complained to Broadwell that he had no right to make such a mortgage of his property, yet at Broadwell's request he made no statement that the cattle were his own, no attempt to discover who the mortgagee was, nor to notify the holder of the mor'gage, whoever he might have been, that he was the owner of the cattle mortgaged. If this statement had been made at that time, the bank might have been able to secure its claim against Broadwell at once; certainly it could have taken the sixty-nine head of cattle that were purchased by Broadwell with this money.

We think that the defendant was negligent in resting easy when he knew that Broadwell had given a mortgage upon his property. There is no direct evidence showing that the defendant knew that the bank held the mortgage. It seems almost incredible that he did not find out from Broadwell from whom he obtained the money. He certainly could have done so after Broadwell volunteered the statement that he had given a mortgage upon the cattle. It would have been less than ordinary business sagacity not to have ascertained the name of the mortgagee, and when the note would become due. Then it would have been common prudence to notify the bank that the cattle mortgaged were partly his, and to give the bank an opportunity to collect its debt, or secure it. A delay of two years made quite a change in the business standing of Broadwell. He might have paid the sum then at once, or probably have secured it. It is not improbable that defendant would at that time have been willing to take the cattle Broadwell had bought with the money obtained at the bank and pay the debt. Evidently the purchase at that time was thought to be a good one, whatever may have happened to the cattle afterward.

We have no hesitation in recommending that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.