P. KLOS, Appellant, v. A. M. ZAHORIK.

**Libel:** CRITICISM OF PRIEST: *Made to depend upon truth of reports.* A newspaper publication criticising the conduct of a priest in certain services held in his church, which does not contain any false statements of facts, is not libelous, since such conduct is proper subject of discussion.

**SAME.** A newspaper article which states that, if certain published accounts of a priest are true, he acted in an improper manner, etc., is not libelous though such facts are not true, since it is not an affirmance of the truth thereof.

**REWRITTEN ARTICLE:** *Defendant's liability as participant.* Where the defendant in a libel suit wrote an article to a newspaper, which rewrote and changed it before it was published, and the publication of the article, as changed, is the libel relied upon, the defendant is not liable as a participant unless it is shown that he participated in the publication of the libelous matter contained therein.

**PARTICIPATION:** *Publication and contribution.* Where the issue in a libel suit is whether defendant contributed to the publication of a libelous article, it is error to give an instruction making such liability depend on whether he published the entire article, or caused it to be published.

**LIBEL IN FOREIGN LANGUAGE:** *Effect of inaccurate translation.* Where an alleged libel was published in a foreign language, and

there is a controversy over the correctness of the translation thereof, and plaintiff, confessing its inaccuracy in certain particulars, amends to conform, it is error to instruct that if the translation introduced in evidence is a correct translation the defendant is liable, since plaintiff's right to recover should not be made to depend on the absolute accuracy of the translation.

FALSITY: *Burden of proof.* Though the petition alleges and the answer denies the falsity of a libelous publication, it is error to charge, without qualification, that plaintiff must prove the facts upon which his action is based, because, notwithstanding the issue joined by the petition and answer the burden of proving that the publication was true, remained with defendant.

PLEADING: *Motion for more specific statement.* Where a libel suit is based on a newspaper publication founded on an article written by defendant which was rewritten and changed by the newspaper before publication, the defendant cannot be required to set out the communication sent to the paper, but plaintiff must, in evidence, show the similarity of the article to that published.

Review on Appeal: CUMULATIVE INSTRUCTION OFFERED. A refusal to give a proper instruction is not error where it is fully covered by an instruction given.

MISCONDUCT OF COUNSEL: *Exceptions.* Where counsel is cautioned as requested concerning his opening statement and no subsequent action of the court is requested because the caution has not been observed, a mere exception noted at the end of the opening statement will not bring up for review the question whether counsel had conformed to the said direction of the court.

REFUSAL TO STRIKE PLEADING FOR BEING FILED LATE. The refusal of the trial court to strike out defendant's amended and substituted answer as being filed too late will not be considered on appeal.

SPECIAL INTERROGATORIES: *Must call for ultimate facts.* Where a requested special interrogatory does not call for any ultimate fact involved in a general verdict, its refusal is not erroneous.

*Appeal from Linn District Court.*—HON. W. N. TREICHLER, Judge

SATURDAY, JANUARY 26, 1901.

THIS is an action brought to recover damages for an alleged libel. Verdict for defendant, and judgment thereon, plaintiff appeals.—*Reversed.*

*C. Nichols* and *Remley, Ney & Remley* for appellant.

*C. W. Keppler* and *Bingham & Mekota* for appellee.

McCLAIN, J.—The facts of the case, so far as necessary to the understanding of the questions of law raised on this appeal, are, without controversy, as follows: A newspaper published in the Bohemian language at Chicago, in its regular issue, early in May, 1898, contained an article, over defendant's name, commenting on the reported action of plaintiff, a Catholic priest, in soliciting contributions from his congregation, at regular service, in aid of the Spaniards, and the indignation of some of his parishioners in regard thereto, and extended comment condemnatory of his supposed action, and of any person who should sympathize with him in such actions or act in a similar manner. It is not questioned in this case that the article is libelous in its nature, and the only issues tried were as to whether the defendant was chargeable with the article, or any part thereof, and whether there were any matters of mitigation in his behalf. From the evidence appearing of record it must be conceded that the article, as published, was not wholly written by defendant. It was shown to have been more or less rewritten and changed by the editor of the paper, and the principal question to the jury was as to the extent to which, if at all, the article as it appeared was based upon the matter communicated to the editor by defendant. Appellant's objections to instructions given and to the refusal to give instructions asked involve the legal rules of liability with reference to comment on the action of clergymen, and also those relating to the contribution to or participation in the publication of a libel.

A clergyman is a public man, in such sense that public comment in a proper manner upon his sayings and doings in his public capacity is justified. In *Kelly v. Tinling,* L. R. 1 Q. B. 699, Chief Justice Cockburn says: "I cannot think that a dispute between a clergyman and his churchwarden as to what he allows to be done in his church during divine service, and the use to which he puts part of it, namely, the vestry room, which were the matters involved in the correspondence between them [and published by defendant in his newspaper], is not a subject of public interest. The maintenance of decency and propriety in conducting public worship and of the sanctity of the sacred edifice and all connected with it, is surely a matter of the greatest public concern. The very use of the term 'public worship' shows this." And it was held that defendant's publication of the matter complained of was privileged. And in *Kelly v. Sherlock,* L. R. 1 Q. B. 686, which was an action for having published in a newspaper a series of libels on plaintiff as the incumbent of a church, the judge, in summing up the case to the jury, said (page 689): "A clergyman with his flock, an admiral with his fleet, a general with his army, and a judge with his jury—we are all of us the subjects for public discussion. So, also, it is a matter of public interest—the dispute between the plaintiff and his organist, and the way in which the church is used. They are all public matters, and may be publicly discussed." And see Webb's, Pollock Torts, 320; Odgers, Libel & Slander, 34. On this theory that their functions are public, the proceedings of a church or congregation are privileged. *Farnsworth v. Storrs,* 5 Cush. 412. And see *Landis v. Campbell,* 79 Mo. 433. The true grounds of justification in a case of the comment upon or criticism of the conduct of public men with reference to public affairs are succinctly stated by a leading text writer as follows: "Every one has a right to comment on matters of public interest and general concern, provided he does so fairly and with an honest purpose. Such comments

are not libelous, however severe in their terms, unless they are written intemperately and maliciously. Every citizen has full freedom of speech on such subjects, but he must not abuse it. * * * The right to comment upon the public acts of public men is the right of every citizen, and is not the peculiar privilege of the press. * * * Every one of the public is entitled to pass an opinion on everything which in any way invites public attention." Odgers, Libel & Slander, 34-36. The action of plaintiff, therefore, in the discharge of his duties and office as a priest, in the conduct of the public functions of his calling, was a proper subject of comment on the part of defendant; and so long as such comment was kept within proper limits the defendant would not be liable in damages for anything he should say, and this would be regardless of the question whether plaintiff had done any act or said any word which he ought not to have done or said. The defendant would have no right to make false statements with regard to what plaintiff did or said, nor would he have a right to extend by publication false statements made by others. But freedom of criticism would secure him in the right to comment upon what was done or said, or even upon what was supposed to have been done or said, so long as no false statements were published.

The tenor of the article which it appears from the evidence defendant did send to the Chicago paper was that, if certain accounts which had appeared in the newspapers with reference to the acts of plaintiff in soliciting contributions from his congregation for the Spaniards were true, then plaintiff had acted in an improper manner, and should be condemned by the public, etc. We do not think this to have been a false statement of fact, but, rather, a criticism of supposed acts which criticism would not be libelous, even though the facts were improperly stated in the newspaper accounts which defendant had seen, and, if properly stated, would not have furnished any ground for the adverse criticism which was made. Can it be supposed for a moment

that if a citizen sees in newspaper accounts of the proceedings of this court that the justices have, on the bench, been guilty of intoxication or indecent behavior, he would be guilty of libel if he should write to a newspaper his condemnation of such supposed conduct, not stating the facts as of his own knowledge, but as derived from newspaper reports? Any such rule as this would certainly be an unjust and improper limitation upon the right to comment upon and criticise acts of those in public life. It is to be borne in mind, however, that this action is not based on the communication which was written by defendant, to the Chicago paper, but upon the publication made in that paper; and it therefore became necessary to submit to the jury the question whether defendant had caused or contributed to such publication, and, if such contribution was only partial, then, whether his contribution thereto or participation therein was of such character as to render him liable. It may here be said, in a preliminary way, as furnishing a basis for our rulings on instructions, that while all persons who cause or participate in the publication of libelous matter are responsible in full for such publication, without apportionment as to their particular share, yet it must be shown that the publication or participation related to the *libelous matter* published and not simply to the article published which contained the libelous matter. The distinction becomes very important in view of the evidence in this case, which tended to show, and from which the jury would have been justified in finding, that the article written by defendant and sent to the Chicago paper was merely the occasion of, or the basis for, the matter writen by the editor which constituted te socalled libelous article, which was prepared and published without any authority whatever from the defendant. And it is too plain to require extended comment that, if the communication from defendant to the paper was in itself unobjectionable, then defendant could not be held liable for im-

proper matter contained in the newspaper article, even though the article might have been to some extent instigated by or based upon defendant's communication.   Suppose, for instance, that the defendant had made use of some beautiful and appropriate quotation from Horace; is it to be supposed that he should be held legally liable for the entire contents of the newspaper article because the editor had had defendant's communication before him, and had extracted the appropriate quotation?   The illustrations which we have used may seem extreme, but they throw light on the possibilities of interpretation of the instructions asked by plaintiff and refused by the court, the refusal of which is made ground of complaint.

The second, third and fourth instructions asked by plaintiff and refused by the court each contained propositions which were erroneous, in view of the principles we have above enunciated.   For instance, in the second it is said that defendant is liable if, having seen the publications in other newspapers, he wrote an article to the Chicago paper which "contributed to or was used in the construction of the article" in question; in the third it is stated that defendant's repetition in his own contribution of matter which he had seen in the newspapers would render him liable for the repetition of such matter, although he did not affirm the truth thereof, provided the article in question was based in part on said communication by defendant; and in the fourth it is announced that it is not essential to plaintiff's recovery that he prove that defendant wrote the article complained of, but that it is sufficient if defendant contributed to the article which was in fact published, by writing and sending the letter which he says he did write and send.   The first instruction asked by defendant and refused explains what is meant by "publication," but we think that this was fully and correctly covered by the instructions given.   The part which is not thus covered erroneously announces the doctrine that defendant is liable for damages

as a publisher if he in any way knowingly and willfully aided or assisted in making, publishing, or circulating the said article. It is plain he might have assisted in making the article, so far as it was not libelous, without being responsible for portions thereof which were libelous. The instruction is wrong in referring to the article, rather than the libelous matter in the article, as the basis of the action.

Appellant's counsel complain of the refusal to submit a special interrogatory asked by them, but such interrogatory did not call for any ultimate fact which would be involved in the finding of a general verdict. All the facts inquired about, which related to the communication of defendant to the Chicago paper might have been true without defendant being in any way chargeable with the communication or publication of the libelous matter contained in that article.

Error is assigned in the statement to the jury in the instruction given by the court stating the issues that "the burden is on plaintff to prove by a preponderance of the evidence thefacts upon which this action is based." In plaintiff's petition the allegation is directly made that the matter published was false and untrue. Defendant in his answer, and again in his substituted answer, explicitly denies each and every allegation in the petition. The court included this allegation and this denial in his statement to the jury of the issues. Under this instruction the jury would have been justified in returning a verdict for defendant on the sole ground that plaintiff had not proved the falsity of the statements complained of. This is not the law. The burden of proving the truth of the libelous matter by way of defense is upon the defendant. *Heilman v. Shanklin,* 60 Ind. 424, 444; *Palmer v. Adams,* 137 Ind. 72 (36 N. E. Rep. 695); *Proctor v. Houghtaling,* 37 Mich. 41, 45; *Stith v. Fullinwider,* 40 Kan. 73 (19 Pac. Rep. 314), Odgers, Libel & Slander, 169; Cooley, Torts, 31. The error of the court in this respect is emphasized by the fact that it refused

to give an instruction on this subject asked by plaintiff, which instruction was as to its other matter unobjectionable, but covered by an instruction given by the court, while on this point it correctly stated the rule of law which was not in any way enunciated in the court's instructions. In this respect the court erred.

In another instruction the court told the jury that if they found that defendant caused the article in question to be published in the Chicago paper, "and that the translation introduced in evidence is a true and correct translation of the same in the English language," then the article was libelous, and the defendant was liable. There was considerable controversy during the taking of the evidence with reference to the correct translation of some parts of the article, which was published in the Bohemian language, and the plaintiff's right to recover ought not to have been made to depend upon the absolute accuracy in every word or phrase of the translation of the article which he offered in evidence. He confessed the error of this translation in two respects, and amended his petition to conform to the evidence, which he certainly had a right to do. This instructon also made defendant's liability depend upon his writing the article or causing it to be published, while under the evidence the question was raised as to whether defendant contributed to some extent to the libelous matter contained in the article; and, if the jury so found, they might properly have found for plaintiff, although defendant did not write the entire article as published. The instruction was erroneous. Another instruction which was dependent upon this one was, perhaps, also faulty, in view of the connection in which it was given.

We will not interfere with the action of the lower court in overruling appellant's motion to strike defendant's amended and substituted answer, based on the ground that it was filed too late, nor in overruling the motion for a more specific statement of the matters alleged in such answer. Plaintiff is not entitled, so far as we

can see, to have defendant set out the communication which he did send to the Chicago paper. As to how far that article was like or contributed to the article published is a matter to be established by plaintiff's evidence.

The assignments based on exceptions to rulings as to admission or exclusion of evidence need not be considered. So far as the questions involved are not settled by the previous discussion, they are not likely to arise upon another trial.

Objection is made to the course pursued by defendant's counsel in stating his case to the jury. It is doubtful if any objection is properly preserved. The court cautioned counsel as requested on behalf of the plaintiff, and no subsequent action of the court was invoked. A mere exception noted by counsel at the end of the opening statement is hardly enough to bring before the court the question whether counsel had conformed to the directions of the court as to the course to be pursued in his argument. Nevertheless, we think there are one or two suggestions made in the argument of defendant's counsel, relating to the church to which plaintiff belonged, and in which he was a priest, which might well have been omitted. For the errors pointed out in the instructions given by the court, the judgment is REVERSED.